# Newport Sand and Gravel Company v. Miller Concrete Construction, Inc., et al.

[614 A.2d 395]

No. 90-540

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 14, 1992

*Frank H. Olmstead* of *Sachs & Desmeules*, Norwich, for Plaintiff-Appellee Newport Sand & Gravel.

*Richard L. Brock* of *Cheney, Brock & Saudek, P.C.*, Montpelier, for Plaintiff-Appellee Capitol Steel & Supply Co.

*Timothy L. Taylor* and *William H. Meub* of *Keyser, Crowley & Meub, P.C.*, Rutland, for Defendant-Appellant Simpson Construction, Inc.

*Tavian M. Mayer* of *Mayer & Berk*, South Royalton, for Defendant-Appellant Royalton Town School District.

**Johnson, J.** The issue in this appeal is whether and to what extent the contractors' lien statute, 9 V.S.A. §§ 1921–1928, protects suppliers of construction materials when they supply materials to subcontractors of general contractors. On motions for summary judgment, the superior court held that suppliers of subcontractors are entitled to a lien against the owner of property benefited by the provision of the materials and that the extent of protection is judged by the amount owed by the owner to the general contractor at the time the notice of lien is re-

ceived. The court also awarded statutory interest running from the date the complaint was filed. We affirm.

The facts are unremarkable. Defendant Royalton Town School District contracted with defendant Simpson Construction, Inc. to build an addition to one of its schools. Simpson acted as general contractor for the project. It subcontracted with defendant Miller Concrete Construction, Inc. to do the concrete work. Miller Concrete arranged to have plaintiff Newport Sand & Gravel, Inc. supply the materials. Newport fulfilled its obligations under the contract, but Miller failed to pay it in the amount of $24,500.

Newport filed a notice of lien against the District on December 11, 1987, under 9 V.S.A. § 1921. At that time, the District owed Simpson, the general contractor, over $900,000. On February 26, 1988, Newport brought suit against the District and Miller to enforce the lien. It also obtained a writ of attachment against the District, but Simpson intervened and posted a surety bond, obviating the need to serve and record the attachment. In fact, Simpson defended the action, with little or no participation from the District, because the District released the remaining contract funds to Simpson after it posted the surety bond. Miller filed bankruptcy, but obtained relief from the automatic stay to participate in discovery.

Although there is no dispute that Miller owed Newport $24,500, there is a substantial dispute between Simpson and its subcontractor, Miller, about monies due from Simpson to Miller. Simpson claims it owes Miller only $11,875, and contends that if Newport is entitled to a lien at all, it is limited by the amount remaining on Simpson's contract with Miller and not by the $900,000 owing from the District to Simpson at the time the lien was filed.

The first issue, then, is whether Newport, as a supplier of construction materials to subcontractor Miller, may claim the protection of the lien statute. The contractors' lien for labor or material provides:

> (b) A person who by virtue of a contract or agreement, either in writing or parol, with an agent, contractor or subcontractor of the owner thereof, performs labor or furnishes materials for erecting, repairing, moving or altering

such improvements shall have a lien, to secure the payment of the same upon such improvements and the lot of land upon which the same stand, by giving notice in writing to such owner or his or her agent having charge of such property that he or she shall claim a lien for labor or material. Such lien shall extend to the portions of the contract price remaining unpaid at the time such notice is received.

9 V.S.A. § 1921(b). Although the present statute was amended as recently as 1986, *Goodro v. Tarkey*, 112 Vt. 212, 214, 22 A.2d 509, 510 (1941), there has been some form of mechanics' or materialmens' lien statute in Vermont since 1849. 1849, No. 21, § 3. The lien is purely a creature of statute, and, therefore, cases from other jurisdictions, and even Vermont cases decided prior to the present statute, have limited application. *T.A. Haigh Lumber Co. v. Drinkwine*, 130 Vt. 120, 126, 287 A.2d 560, 563 (1972). Notwithstanding the diversity of mechanics' lien statutes, their general intent is to provide limited protection for suppliers to construction projects by giving them a tool to secure payment for their products, which is, presumably, part of the contract price received by the general contractor from the owner. See *Seaman v. Climate Control Corp.*, 181 Conn. 592, 597, 436 A.2d 271, 275 (1980). By giving suppliers and others who benefit the project an in rem right against the owner, the statute overcomes the lack of privity between the suppliers and the owner, since the suppliers typically deal with the general contractor or the subcontractors. *Stratton v. Inspiration Consol. Copper*, 140 Ariz. 528, 531, 683 P.2d 327, 330 (Ct. App. 1984); *Seaman*, 181 Conn. at 596, 436 A.2d at 274.

Simpson's argument focuses on the statutory language. It states that because Newport supplied Miller, which it describes as a subcontractor of the "general," and not "of the owner," as required by the statute, Newport is not entitled to a lien. Simpson contends that although Miller would be allowed a lien, as a subcontractor, Miller's suppliers would not. Simpson's interpretation is internally inconsistent, mischaracterizes the relationship of Miller to the owner, and defeats the purpose of the statute.

If Miller is only a subcontractor of the general contractor, then, under Simpson's theory, Miller should not be entitled to a lien because it is not also a subcontractor of the owner. Under

Simpson's theory, Miller should be allowed to recover only if it contracts, as a subcontractor, directly with the owner. If it did so, however, it would be a contractor and not a subcontractor, and would not be covered by the statute.

More importantly, Miller *is* a subcontractor "of the owner." A subcontractor is "[o]ne who takes portion of a contract from [a] principal contractor." Black's Law Dictionary 1277 (5th ed. 1979). One can be a subcontractor of the owner only if there is an owner's general contract in the first place. The obvious purpose of the use of the word "subcontractor" in the statute is to cover precisely the factual situation before the Court. The general contractor secures the job and subcontracts major portions of it. Suppliers provide materials to the subcontractors so that the "subs" can perform their part of the work to be done under the general contract. Here, Simpson asked Miller to do the concrete work, and Miller obtained supplies for that portion of the job from Newport.

Simpson's interpretation also defeats the purpose of the statute by cutting off protection for suppliers who are more than one step removed from the owner. But the Legislature intended, by the express terms of the statute, to extend the protection of a lien to "persons" who "furnish materials" pursuant to "contract or agreement" with an agent, contractor, or subcontractor of the owner. Suppliers of subcontractors are, necessarily, more than one step removed from the owner. The plain wording of the statute includes them. See *Addison County Community Action v. City of Vergennes*, 152 Vt. 161, 165, 565 A.2d 233, 235 (1989).

Simpson's second argument is that, even if Newport is entitled to a lien under the statute, the lien should be measured by Simpson's contract with Miller, as the party with whom Newport contracted. Again, this interpretation ignores the plain meaning and intent of the statute.

The last sentence of § 1921(b) states, "Such lien shall extend to the portions of the contract price remaining unpaid at the time such notice is received." The contract referred to in this sentence is the owner's contract because the in rem claim extends to the property of the owner, not the general contractor. Notice is required to be given to the owner, not the general contractor. The statutory scheme is designed to put the owner

on notice that materials have been supplied to its benefit, and the supplier's bill remains unpaid. The owner can then segregate funds from the amounts still owing on the contract price to the general contractor to pay the supplier.

█ Our cases imply that the amount due to the general contractor from the owner at the time a lien is filed is the amount by which we limit a supplier's lien. See *T.A. Haigh Lumber Co. v. Drinkwine*, 130 Vt. at 129, 287 A.2d at 565 (mechanic's lien denied supplier because no money due from owner to general contractor when notice filed); *Cote v. Bloomfield*, 128 Vt. 306, 311, 262 A.2d 467, 471 (1970) (obligation of owner under mechanic's lien was only as to sum of money due under general contract after offsets for failure of general to complete work). These cases were decided under a version of the statute that contained the same language in issue here.

Simpson offers a number of policy considerations, rather than textual support, to advance its argument that we should interpret the statute differently. These arguments are more appropriately presented to the Legislature than to this Court because we find the meaning of the statute to be plain on its face.

Finally, Simpson argues that the trial court erred in awarding interest on the amount owed, $24,500, from the date the complaint was filed, in the amount of $9,260.15, and in granting an additional attachment for such interest post-judgment. Simpson contends that interest was improper because the District released the balance of the contract price to Simpson after Simpson provided security for Newport's potential judgment against the District. Therefore, there were no contract funds remaining at the time the superior court awarded interest, with the result that the District is liable for more than the contract price, a concept antithetical to the lien statute.

█ We disagree. Prejudgment interest may be awarded as damages for detention of money due for breach or default. This interest is awarded as of right when the principal sum recovered is liquidated or capable of ready ascertainment and may be awarded in the court's discretion for other forms of damage. Reporter's Notes V.R.C.P. 54(a), 1981 amendment. See *VanVelsor v. Dzewaltowski*, 136 Vt. 103, 106, 385 A.2d 1102, 1104 (1978); *Vermont Structural Steel Corp. v. Brickman*, 131

Vt. 144, 147, 300 A.2d 629, 631 (1973). Interest ordinarily runs from the time of maturity or demand for payment or the time of default, which may be the date when the action is commenced. *VanVelsor*, 136 Vt. at 106, 385 A.2d at 1104–05.

Other jurisdictions have permitted suppliers to recover interest from owners in actions to foreclose mechanics' liens, as part of the general law on interest. In *General Electric Supply Co. v. Southern New England Tel. Co.*, 185 Conn. 583, 606, 441 A.2d 581, 592 (1981), the Connecticut Supreme Court held that the allowance of interest is primarily an equitable determination within the discretion of the trial court; hence, the trial court had properly awarded interest to holders of mechanics' liens where the owner as well as the general contractor possessed the means of expeditiously resolving the lienors' claims. In *Mid-West Engineering & Constr. Co. v Campagna*, 421 S.W.2d 229, 233 (Mo. 1967), the Missouri Supreme Court observed that a mechanics' lien law should be construed as favorably to mechanics and suppliers as its terms will permit. The court concluded that it is fair to include interest in the amount charged to an owner who is not in privity with the lienor because the owner can prevent construction from commencing or, at least, continuing under circumstances that might generate mechanics' liens against the owner's property. *Id.*

■ In the present case, we consider the award of interest to be a matter within the discretion of the trial court, and conclude that such discretion was not abused. There was no dispute over the amount Newport was owed on its invoice for the concrete supplied. Therefore, the amount of the claim was a readily ascertainable, liquidated sum. The District possessed the means of expeditiously resolving Newport's claim by paying the undisputed amount. Instead, it allowed Simpson to post a bond in the amount of the lien and take over the litigation so that Simpson could litigate the operation of the mechanics' lien statute. Simpson hoped to reduce the amount legitimately owed to Newport, an issue in which the District was wholly uninterested, because it had paid Simpson the remaining funds due on the general contract. The District acted at its peril.

Simpson, in control of all of the contract funds, now seeks to avoid a judgment that Newport is entitled to interest on monies Simpson effectively withheld while litigating the legal issues

discussed herein. Simpson's curious logic would reward Simpson and the District for releasing the balance of the contract funds prematurely, while punishing Newport, which met all of its obligations under its contract.

■ The District merits no rewards in this case, either. It is charged with knowledge that interest may be awarded both pre- and post-judgment, as are other litigants. It therefore cannot be exempt from interest on the ground that it unwisely released the balance of the contract funds to Simpson after it had notice of the claim. For the same reason, the District cannot be exempt from interest on the ground that Newport failed to give notice of the potential for recovery of interest when it gave notice of the principal amount of its lien. The mechanics' lien statute requires only that the lienor give notice of its claim for labor or material. 9 V.S.A. § 1921(b).

Moreover, carving an exception for mechanics' liens from the general rules on interest encourages collusion between owner and general contractor. The owner and general contractor could delay payment, enjoy the use of the money, and avoid interest by having the owner disburse all remaining contract funds to the general contractor prior to judgment. The intent of 9 V.S.A. § 1921(b), which is to provide suppliers with a method of accessing funds still available under the general contract, would be frustrated.

Allowing interest in appropriate cases places no special burden on owners. Vigilant owners are unlikely to have to estimate interest costs resulting from lengthy litigation over suppliers' liens because they will act quickly to resolve disputes. If they must do so, they will certainly present strong grounds to a trial court for denying interest on the equitable basis that the amount due is in dispute and incapable of being readily determined.

■ Thus, we conclude that the protection that 9 V.S.A. § 1921(b) affords to suppliers includes the recovery of interest, in the court's discretion, as long as the amount owing on the general contract when the owner receives notice of the lien is sufficient to cover the judgment.

*Affirmed.*

**Allen, C.J.,** concurring and dissenting. I concur with the majority's resolution of the first two arguments raised but dissent from the affirmance of the interest award. I believe that the award of interest under the facts of this case was an abuse of discretion.

In its notice of lien, plaintiff stated the amount it was claiming but did not indicate whether interest was included or would be claimed. In seeking an attachment pursuant to 9 V.S.A. § 1924, plaintiff presented evidence that it was likely to recover the sum of $25,349.77 and that interest was likely to accrue in the amount of at least $500. A writ of attachment was issued in the amount of $25,400, but it was never served, and the property was never attached or foreclosed pursuant to the lien statutes, presumably because the general contractor posted a bond in the amount of $25,400 conditioned for the payment of any judgment by plaintiff against the school district. The request for the subsequent writ of attachment issued in February of 1991 for the interest accrued and additional interest should have been denied because it was untimely under 9 V.S.A. § 1924. *Filter Equipment Co. v. IBM*, 142 Vt. 499, 502–03, 458 A.2d 1091, 1092–93 (1983).

The acceptance of the bond by plaintiff, evidenced by its failure to pursue the enforcement of the lien in accordance with the statutory requirements, limited the exposure of the school district to the penal amount of the bond. While plaintiff argues that it should not be penalized for initially asking too little for post-judgment interest, the school district should not be penalized because it did. Its exposure was fixed by the original judgment, and it should have been free to release monies due over that amount to the general contractor pursuant to the contract.