## Agency of Natural Resources, State of Vermont v. Glens Falls Insurance Co., Continental Insurance Co., Liberty Mutual Insurance Co. and Tamarack Services of South Burlington

[736 A.2d 768]

No. 98-073

Present: **Dooley, Morse and Johnson, JJ., Norton, Supr. J., and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed June 25, 1999

Motion for Reargument Denied August 2, 1999

*William H. Sorrell*, Attorney General, and *William Griffin*, Chief Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*William F. Ellis* and *Kevin J. Coyle* of *McNeil, Leddy & Sheahan*, Burlington, for Defendants-Appellees Glens Falls Insurance Co. and Continental Insurance Co.

*Michael B. Clapp*, Burlington, for Defendant-Appellant Liberty Mutual Insurance Co.

**Johnson, J.** This case concerns a dispute among the parties and their insurers over the allocation of costs for the cleanup of a series of gasoline leaks. The superior court ruled that Liberty Mutual Insurance Company (Liberty) was responsible for approximately 92% of the costs, that the Continental/Glens Falls Insurance Company (Continental) was responsible for the balance, and that Liberty's counterclaim against the State of Vermont for contribution was without merit. Liberty appeals, contending the court erred in: (1) dismissing its counterclaim against the State; (2) making certain findings concerning the amount of petroleum released and the allocation of remediation costs among the parties; (3) ordering a setoff against Liberty's restitution award from Continental; and (4) declining to award prejudgment interest. Continental has cross-appealed, contending the court erred in rejecting its defenses of waiver, unclean hands, and laches against Liberty's cross-claim for restitution. We reverse and remand on the issue of prejudgment interest, and otherwise affirm.

## FACTS

As found by the trial court, the facts were as follows. In 1983, gasoline began to leak from underground storage tanks at Spillane's Service Center on Route 7 in Shelburne, a site owned by Tamarack Services of South Burlington. The leak was discovered in 1985, and shortly thereafter the State ordered corrective action.

The volume of the release was large. Free-product gasoline spread thoughout the site and migrated to adjacent properties. Liberty, Tamarack's insurer at the time of the leak, was notified of the release and accepted responsibility for payment of the costs of remediation. Tamarack hired Ground Water Technologies, Inc. (GTI) to monitor contamination levels and perform the cleanup.

Liberty's policy expired in August 1986, at which time Continental became the insurer. Continental's policy, which was renewed in 1987

and 1988, contained several pollution exclusion endorsements. Liberty continued to pay the costs of remediation through this period.

In November 1987, GTI discovered a second release of gasoline at the site consisting of several leaking fuel lines. These were repaired by January 1988. During the summer of 1989, more leaks occurred. The parties presented a variety of expert evidence and opinion at trial relating to the rate, duration, and overall volume of the three releases. The court found that the initial release, which Continental's expert had characterized as "massive," consisted of 11,000 gallons. The court found that the second and third releases, which were much smaller and were discovered relatively quickly through GTI's previously installed monitoring equipment, each consisted of 450 gallons.

Tamarack made no claims under its policies with Continental at the time of the second and third releases, believing that the pollution exclusion clauses precluded coverage. Liberty received actual notice of the third release no later than September 1989, and continued to pay remediation costs until 1990, when it requested that GTI provide an estimate of the remediation costs attributable to releases other than the first release. GTI estimated that approximately $39,291 of the $1,103,587 expended to date could be attributed to the later releases.

In September 1990, Liberty suspended payments pending negotiations with Tamarack and the State regarding allocation of remediation costs. In October, an agreement was reached in which Tamarack agreed to apply to the State's petroleum cleanup fund under 10 V.S.A. § 1941, which authorizes the Secretary of the Agency of Natural Resources to disburse funds for "uninsured costs" of cleanup and restoration of contaminated soil caused by releases of petroleum from underground storage tanks. 10 V.S.A. § 1941(b). Tamarack represented that it was uninsured for the costs of remediating the 1987 and 1989 releases because of the pollution exclusion clauses in its policies with Continental. Following the authorization of payments from the cleanup fund, Liberty agreed to split the costs of future remediation with the State, and the State agreed to pay 50% of past expenses it determined to be reasonable. Negotiations were not successful over what past costs were reasonable.

Later, the State discovered evidence that the pollution exclusion clauses in the Continental policies were invalid because Continental had not obtained timely approval of the clauses from the Department of Insurance. The State thereupon commenced this litigation by filing

a complaint against Tamarack, Continental, and Liberty to declare Continental liable under its policies for the 1987 and 1989 releases and to recover the remediation costs paid by the State. Liberty filed a counterclaim against the State on the theory that the State was obligated under the agreement to pay for past expenses allocable to the 1987 and 1989 releases. As the subrogee of Tamarack's rights, Liberty also filed a cross-claim against Continental, seeking reimbursement of past expenses allocable to the 1987 and 1989 releases. Continental asserted certain affirmative defenses against Liberty's cross-claim, and filed a cross-claim against Liberty alleging various causes of action.

Continental subsequently entered into a settlement agreement with Tamarack and the State, in which it agreed to pay $150,000 for past remediation expenses, and to assume responsibility for the State's half of future remediation costs. Continental reserved its right to seek monetary or injunctive relief against Liberty.

The trial court subsequently granted partial summary judgment in favor of the State, ruling that the pollution exclusion clauses in the Continental insurance policies were invalid and that insurance coverage was therefore available to Tamarack under those policies for the cost of remediating the 1987 and 1989 releases. Later, the court granted the State's motion to dismiss Liberty's counterclaim, ruling that the Secretary was authorized to approve expenditures from the fund only for uninsured cleanup costs.

At the conclusion of the trial, the court issued a lengthy written decision, which it subsequently amended, containing extensive and detailed factual findings and conclusions. The court found that there was a "linear relationship" between the total volume of petroleum spilled during the several releases and the total cost of remediation incurred by Liberty and Continental, and calculated the parties' proportional share of liability based upon the percentage of the total spill (11,900 gallons) attributable to the initial release (11,000 gallons) and subsequent releases (900 gallons). In this fashion, the court determined that 7.563% of past and future remediation costs was Continental's responsibility and 92.437% was Liberty's responsibility. Applying these percentages to the total costs of remediation ($2,505,964), the court found that Liberty was entitled to restitution from Continental in the amount of $189,526.05. Having previously paid $189,718.01 toward remediation of the site, Continental was entitled to a credit and refund of $191.96 from Liberty. The court ruled against Continental on its cross-claim against Liberty. This appeal followed.

## DISCUSSION

*Counterclaim Against State*

Liberty contends the court erred in dismissing its counterclaim against the State for enforcement of the State's agreement to pay 50% of the reasonable remediation costs paid by Liberty between November 1987 and December 31, 1990.* Liberty also contends the court's order requiring Liberty and Continental to split the future costs of remediation conflicted with Liberty's agreement with the State.

■ The statute authorizing state expenditures for petroleum cleanup is clear and unambiguous. The Secretary may authorize such expenditures only for "uninsured costs" of pollution cleanup. 10 V.S.A. § 1941(b). The agreement with Liberty to expend state funds was plainly premised upon the representation and understanding that Tamarack was uninsured for the 1987 and 1989 releases, an understanding that later proved to be unfounded. Thus, the court correctly concluded that there was no authority for the State's expenditure of cleanup funds in this case, and properly dismissed Liberty's counterclaim.

Liberty contends, nevertheless, that Tamarack was somehow uninsured at the time the State authorized the expenditures, and only later became insured when the court ruled that Continental's pollution-exclusion clauses were invalid. The court's judgment did not create the insurance coverage, however, but merely declared the existence of coverage under the policies. See 12 V.S.A. § 4711 (courts have power "to declare rights, status and other legal relations"); *Robtoy v. City of St. Albans*, 132 Vt. 503, 504, 321 A.2d 45, 46 (1974) (function of declaratory judgment is to provide declaration of rights, status and other legal relations). The order dismissing Liberty's counterclaim against the State, and the order requiring Liberty and Continental to split the future costs of remediation, were therefore proper.

*Sufficiency of the Evidence*

Liberty next contends the evidence failed to support the court's findings concerning the volume of the petroleum releases, the total

---

* Although the State contends the court's finding that it agreed to pay half of the pre-1991 remediation costs was unsupported by the evidence, we need not reach that issue in light of our disposition of the claim.

cost of remediation of the Tamarack site, the restitution percentages attributable to Liberty and Continental, and the calculation of the restitution award.

The standard of review is well settled. We will not set aside a trial court's findings unless clearly erroneous, nor disturb its conclusions if they are reasonably supported by the findings. See *Morgan v. Kroupa*, 167 Vt. 99, 104, 702 A.2d 630, 633 (1997). Findings are viewed in the light most favorable to the judgment, disregarding modifying evidence, and will not be disturbed merely because they are contradicted by substantial evidence; rather, an appellant must show that there is no credible evidence to support the finding. See *Bianchi v. Lorenz*, 166 Vt. 555, 562, 701 A.2d 1037, 1041 (1997).

Liberty contends the evidence failed to support the court's finding that the volume of the initial 1985 release of petroleum was 11,000 gallons. Continental's expert testified that the first release was "massive," and using a variety of methodologies calculated that the volume ranged variously from seven to twenty-seven thousand gallons, "in the tens of thousands of gallons," "something over 11,000 gallons," and "10,000 gallons or greater." These estimates were based, in part, upon evidence indicating both the daily rate of leakage, and the duration of the leak. Credible evidence thus supported the court's decision to fix the volume at a relatively conservative 11,000 gallons.

Liberty further contends the evidence failed to support the court's finding that the volume of the 1987 release was 450 gallons. The record, however, contains a GTI report, prepared at Liberty's request, calculating that the second release was between 300 and 600 gallons. The court's decision to fix the volume at the mid-point was not unreasonable. Although Liberty contends the report's author was not qualified as an expert, Liberty raised no objection to the report on this or any other ground at trial. Accordingly, the claim is waived on appeal. See *State v. Fisher*, 167 Vt. 36, 43, 702 A.2d 41, 45-46 (1997) (failure to raise objection at trial waives claim of error on appeal). Liberty also argues that the estimate of 300 to 600 gallons in the GTI report referred to a different release of petroleum, but testimony at trial refuted the contention. The evidence thus supported the finding.

Liberty next challenges the court's finding that the volume of the 1989 release was 450 gallons, asserting that evidence relating to the rate and duration of leakage required a finding of at least 1560 gallons. There was evidence, however, indicating that the third release consisted of three separate leaks of approximately one gallon per day, between April and August of 1989, yielding a total volume of

approximately 450 gallons. The fact that there was conflicting evidence does not render the court's finding unreasonable or clearly erroneous. See *Bianchi*, 166 Vt. at 562, 701 A.2d at 1041.

█ Finally, the record contains ample evidence to support the court's finding that the total cost of remediation, including the amounts paid by Liberty and Continental, was $2,505,964.

## Allocation of Costs and Restitution

Liberty next takes issue with the court's allocation of proportional responsibility for the costs of remediation, which resulted in a finding that Liberty was liable for 92.437% of the costs of remediation, and Continental was responsible for 7.563%. As noted, the liability percentages derived by the court were based upon the respective percentages of the total release of petroleum attributable to the initial and subsequent petroleum releases. The court's calculations flowed logically from its reasoning and findings, which were based in turn upon credible evidence; they cannot, therefore, be disturbed. See *id.* Nor did the court clearly err, as Liberty contends, in failing to make a separate restitution award of $39,291.50 based upon GTI's estimate of the costs attributable to the 1987 and 1989 releases which Liberty paid prior to 1991. The trial court, as noted, found that Liberty was entitled to a total restitution award of $189,526, which plainly included the $39,291 in costs calculated by GTI. There was no error.

█ Liberty also contends the court erred in ordering that the $189,718 paid by Continental toward remediation of the site, pursuant to its settlement with the State, be set off against Liberty's restitution award of $189,526. The setoff, however, was entirely consistent with the court's finding concerning the respective liabilities of Liberty and Continental. The fact that the court rejected Continental's cross-claims against Liberty did not undermine the court's broad authority to award the setoff. See *Jensvold v. Town & Country Motors, Inc.*, 162 Vt. 580, 584, 649 A.2d 1037, 1041 (1994) (court has broad discretion to award setoff under general equitable principles). Moreover, in its settlement with the State, Continental expressly reserved its right to seek reimbursement from Liberty. Accordingly, we find no error.

## Discovery Sanction

Continental moved for sanctions against Liberty for failing to produce documents that Continental had requested concerning Liberty's settlement of third-party claims against Tamarack for a total of

$396,692. Following a hearing, the court granted the motion, ruling that Liberty would be precluded from introducing evidence relating to its cross-claim against Continental for restitution of the monies paid in settlement of the third-party claims.

Liberty's argument on this point is brief, and consists of the assertion that there is "nothing in the record to suggest that Liberty violated any rules relating to discovery," and hence no basis for the sanction. The record shows that following an evidentiary hearing and extensive argument, the court concluded that Liberty had failed to respond adequately to Continental's request for the files relating to the dozen or more third-party claims against Tamarack. In September 1993, and again in October 1995, Continental had requested copies of the complaints and settlement agreements. Continental sought the documents in connection with Liberty's claim for reimbursement of the costs of settlement associated with the second and third releases. Liberty provided none of the requested documents until trial in March 1997, when it produced one of the files that it claimed to have just discovered. Liberty's counsel asserted that it had been unable to locate the balance. The court concluded that Liberty had not adequately complied with the request, and that Continental could not properly defend the claim for reimbursement of the settlement costs without the requested documents. As the court succinctly explained: "[W]hat I'm going to do is not receive in evidence the third-party claims. . . . [Continental/Glens Falls] have to see the settlement agreements. They asked for them, they're entitled to them, and they should have them."

■ Contrary to Liberty's claim, the record amply supports the court's ruling. Based on the evidence, the court was entitled to find that Liberty had not been forthcoming in responding to the discovery request, and in concluding that Continental had been severely prejudiced as a result. See *Bianchi*, 166 Vt. at 562, 701 A.2d at 1041 (findings must be upheld if supported by any credible evidence); see also *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1255 (Fed. Cir. 1990) (extent of party's noncompliance with discovery request supported implicit finding of willful failure to comply). We cannot say that the court's sanction, in these circumstances, constituted a patent abuse of discretion. See *White Current Corp. v. Vermont Elec. Coop.*, 158 Vt. 216, 223, 609 A.2d 222, 226 (1992) (absent abuse of discretion, trial court's imposition of discovery sanctions will not be disturbed). Accordingly, the court's ruling must be upheld.

Liberty raises the additional claim in its reply brief that the discovery sanction was not predicated upon a specific order compelling production under V.R.C.P. 37(b)(2). Liberty did not raise this argument at trial, or in its opening brief, and therefore has waived the claim on appeal. See *Long v. L'Esperance*, 166 Vt. 566, 570 n.4, 701 A.2d 1048, 1052 n.4 (1997) (preservation at trial); *Secretary v. Earth Constr., Inc.*, 165 Vt. 160, 165, 676 A.2d 769, 773 (1996) (preservation in appellant's original brief).

*Prejudgment Interest*

The court initially awarded prejudgment interest on Liberty's restitution award, but reversed itself in response to Continental's motion for reconsideration, concluding that prejudgment interest was unavailable because the amount of damages was in dispute and the subject of conflicting expert testimony. We have explained the rule on prejudgment interest as follows: "Prejudgment interest may be awarded as damages for detention of money due for breach or default. This interest is awarded as of right when the principal sum recovered is liquidated or capable of ready ascertainment and may be awarded in the court's discretion for other forms of damage." *Newport Sand & Gravel Co. v. Miller Concrete Constr., Inc.*, 159 Vt. 66, 71, 614 A.2d 395, 398 (1992).

The principal rationale for an award of prejudgment interest as of right is that, where damages are liquidated or determinable by a reasonably certain standard of measurement, "the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages." *Johnson v. Pearson Agri-Sys., Inc.*, 350 N.W.2d 127, 130 (Wis. 1984). The fact that the amount of damages is uncertain or disputed, however, does not bar an award of prejudgment interest. As we recently explained in *Estate of Fleming v. Nicholson*, 168 Vt. 495, 500, 724 A.2d 1026, 1029 (1998): "Even if the damages [are] not readily ascertainable, . . . the trial court maintains the ability to award prejudgment interest in a discretionary capacity to avoid injustice."

Here, the court properly concluded that Liberty was not entitled to prejudgment interest as a matter of right, the amount of restitution damages having been the subject of considerable uncertainty and dispute. The court failed, however, to consider whether Liberty should be awarded prejudgment interest as a discretionary matter based upon Liberty's claim that it was wrongfully denied the use of the money during the period in question, and required

prejudgment interest to be made whole. Accordingly, the matter must be remanded for further proceedings on this issue.

*Continental's Claims*

In its cross-appeal, Continental contends the court erred in rejecting its affirmative defenses of waiver, unclean hands, and laches to Liberty's cross-claim for restitution. Relying on *Jefferson Insurance Co. v. Travelers Insurance Co.*, 159 Vt. 46, 614 A.2d 385 (1992), Continental contends Liberty waived its right to seek restitution by failing to reserve its right in the settlement agreements with Tamarack and the State. In *Jefferson*, we approved the rule "that when, *with knowledge of facts that would place liability for a loss on another insurer*, an insurer negotiates and settles a claim against its insured without expressly reserving rights to pursue a cause of action for contribution, indemnity or subrogation at a later time, such a claim is waived." *Id.* at 50, 614 A.2d at 388 (emphasis added). As the court here found, however, Liberty entered the settlement agreement with the State and Tamarack under the belief that it was the only insurer, which plainly distinguishes this case from *Jefferson*.

Continental also contends that Liberty forfeited any claims against Continental as the subrogee of its insured, Tamarack, as a result of Liberty's unfair dealings with Tamarack. See *Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 132 Vt. 341, 346, 318 A.2d 659, 662 (1974) (subrogee must have clear equity and subrogation may be defeated by countervailing equities). The trial court found, however, that the settlement negotiations among Liberty, Tamarack, and the State "were conducted fairly," that Liberty's subsequent denial of further benefits after discovering Continental's potential liability was "reasonable under the circumstances," and that Continental had "not established a bad faith breach of fiduciary duty." These findings and conclusions were supported by credible evidence and therefore may not be disturbed on appeal.

Nor will we second-guess the court's finding that all of the parties were under the mistaken belief that Liberty was the only insurer, that Tamarack learned of coverage under Continental's policies in 1992, and that Liberty did not, therefore, unreasonably sit on its rights in failing to seek restitution against Continental until the filing of its cross-claim in 1993.

*That portion of the judgment denying prejudgment interest on the restitution award against Continental is reversed and remanded for*

*further proceedings consistent with the views expressed herein. In all other respects, the judgment is affirmed.*