940 A.2d 717 (2007)
2007 VT 108
James A. NAYLOR d/b/a Naylor Construction
v.
Tammy J. CUSSON and Dorothy Ducharme.
No. 06-134.
Supreme Court of Vermont.
Motion for Reargument Denied October 17, 2007.
September 18, 2007.
*719 Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, Associate Justices.

ENTRY ORDER
¶ 1. Homeowners Tammy Cusson and Dorothy Ducharme appeal a superior court order granting a monetary award plus interest and `penalties to contractor James Naylor under the Prompt Payment Act, 9 V.S.A. §§ 4001-4009. Contractor replaced homeowners' foundation, but homeowners did not make the final payment for the work. We affirm the judgment of the superior court and remand for further proceedings with respect to attorney's fees.
¶ 2. After evaluating a site visit, testimony, and exhibits admitted at a two-day bench trial, the trial court found as follows. Contractor and homeowners first discussed plans to build a new cellar in December 2003. The parties signed a contract in early April 2004. Construction began in early June 2004, and work concluded in late July 2004. Prior to signing the contract, the parties discussed their. respective obligations and determined that contractor would perform only those items specified in the contract. In addition, the parties agreed that homeowners had specific responsibilities to address both before and after the work was completed, such as acquiring topsoil and performing finish grading and landscaping.[*] By the time of contractor's first day of work, however, homeowners had not completed a number of essential tasks. For example, because homeowners had not dismantled the deck, contractor had to dismantle it to proceed. Homeowners also made a major change in the design of the cellar after construction started. Contractor did not charge them more for the increased construction time that this change necessitated.
¶ 3. The contract stipulated that one third of contractor's compensation should be paid at the outset, another third halfway through the project, and the final third upon completion. Homeowners paid the first and second installments, but not the third. As a result, contractor was unable to pay all of his subcontractors, and one of them filed suit. Over time, contractor paid that subcontractor the total amount due, as well as attorney's fees and costs. Contractor asserted a $25,000 mechanics lien against homeowners' property in September 2004 and brought suit against homeowners in February 2005, seeking a writ of attachment. The superior court approved a writ of attachment in the amount of $20,000 in March 2005. In his complaint, contractor sought enforcement of the mechanics lien. In total, he sought interest, penalties, costs, and attorney's fees under the Prompt Payment Act, 9 V.S.A. § 4007(c), in addition to the amount of the final installment.
¶ 4. Homeowners argued, inter alia, that they told contractor that he would be paid in full only if they were able to refinance their house based on the work he performed. Their main defense was that contractor did not complete all of the work *720 and that much of the work he performed was defective.
¶ 5. The superior court found not credible homeowners' claim that they would pay the last installment only if the refinancing was successful. With respect to homeowners' main defense, the court found that "[contractor] performed his work in a good and workmanlike manner and performed each and every element required to be performed by him as set forth in the contract between the parties." The court specifically found not credible the testimony of homeowners' expert, noting that in the expert's "entire career" he had "prepared only two estimates for jacking-up a house and . . . [had] never done this kind of work himself." Based on its findings, the court concluded that homeowners had breached the construction contract by failing to pay as required. Under the Prompt Payment Act, the court awarded contractor the amount of the last installment, consequential damages, penalties, interest, and attorney's fees.
¶ 6. In this Court, homeowners challenge the superior court's finding that contractor performed every element of the contract in a good and workmanlike manner. They do not challenge the court's determination that they owe the last installment under the contract, but argue that they did not violate the Prompt Payment Act and, therefore, do not owe interest, penalties, and attorney's fees under the Act. They argue that unless contractor completed every contract item, and did so in a workmanlike manner, they were not required to make the last payment, and the court erred in finding that they violated the Prompt Payment Act. Specifically, they argue that, as a matter of law, the contractor failed to fully and properly perform because he: (1) left a gap between the wooden planks of a lintel beneath their deck, (2) caused a loss of power in their garage, and (3) left bent aluminum flashing exposed on the outside of their house. In addition, they allege that contractor failed to perform the terms of the contract in a workmanlike manner and violated a provision of the contract by leaving the uppermost portion of the foundation's insulation visible above ground level.
¶ 7. On appeal "fflindings of fact shall not be set aside unless clearly erroneous. . . ." V.R.C.P. 52(a)(2). Furthermore, we view factual findings "in the light most favorable to the prevailing party below, disregarding the effect of modifying evidence." Jarvis v. Gillespie, 155 Vt. 633, 637, 587 A.2d 981, 984 (1991). Additionally, findings under review "will stand if there is reasonable and credible evidence to support them." Harlow v. Miller, 147 Vt. 480, 481-82, 520 A.2d 995, 997 (1986).
¶ 8. We address each of homeowners' four construction-related complaints in turn, but start by making general observations. We note that these issues were covered in the testimony of homeowners' expert, and, as stated above, the superior court did not accept the expert's opinion that contractor's performance was defective. We also note that the trial court found that "[homeowners] had received bids from other contractors who would have done more work but [they] rejected those offers because [contractor] agreed to do less work.-but charge them less for it." Ultimately, the parties entered into a written contract specifying the work contractor was to perform. See N. Aircraft., Inc. v. Reed, 154 Vt. 36, 44-45, 572 A.2d 1382, 1388 (1990) (stating legal presumption that parties "intend[] to be, bound by the plain and express language of their contracts as they are written").
¶ 9. With regard to the lintel beneath the deck, the contract does not specify that contractor was to reconstruct the deck. The trial court found that prior to *721 signing the contract the parties agreed that the deck was homeowners' responsibility. Thus, the trial court rejected homeowners' argument that "additional work should have been done by necessity of implication" since "the parties negotiated specific items in their agreement." We agree with that conclusion. See Medlar v. Aetna Ins. Co., 127 Vt. 337, 346, 248 A.2d 740, 747 (1968) (explaining the rule of interpretation that "expression of one thing is exclusion of another" with respect to a contract).
¶ 10. After homeowners failed to dismantle the deck as, promised, contractor completed the task and later put it back together. The trial court noted that "[t]he deck had been constructed of salvaged material and [contractor] told [homeowners] that he made no guarantees that the deck would be able to be reassembled." These findings are supported by the evidence and, in turn, support the court's conclusion that contractor's performance of work required by the contract was not defective. Contractor's work with regard to the lintel beneath the deck was voluntary and uncompensated, and could not be the basis for withholding payment.
¶ 11. With respect to the power loss in the garage, there was no evidence demonstrating that contractor caused the power loss. Thus, the fact that the power loss persisted when contractor completed his work does not demonstrate that he failed to discharge his responsibilities under the contract or did so in a defective manner.
¶ 12. Homeowners' two other complaints, involving aluminum flashing and insulation, are relatively minor. With regard to the flashingthat is, the material used to waterproof the walls of the househomeowners complain that some of it was bent upward and outward when the house was elevated, leaving sharp edges of bent aluminum exposed after the house was lowered onto the new foundation. The contract did not expressly address the issue of flashing. Contractor testified that the parties reached an oral agreement under which homeowners would bear responsibility for handling any flashing-related matters. Homeowners contested that point, and the trial Court resolved the factual dispute in favor of contractor. This assessment of the evidence was consistent with the court's decision not to credit homeowners' testimony on a number of other matters. We defer to the trial court's credibility determinations, and we have consistently noted that "[w]hen the evidence is conflicting, the credibility of the witnesses, the weight and sufficiency pf the evidence, and its persuasive effect are questions for the trier of fact." Griffith v. Nielsen, 141 Vt. 423, 429, 449 A.2d 965, 968 (1982).
¶ 13. With respect to the foundation's insulation, the parties' assertions were also conflicting. The trial court found that homeowners agreed to "truck in topsoil, do the finish grading and landscaping, [and] install window wells around the new basement windows" after contractor had concluded his work. This finding is not clearly erroneous and is in keeping with the conclusion that the parties agreed that contractor would perform only those items specified in the contract. Homeowners rely on the contract provision that required contractor to insulate the foundation "to ground level" and the requirement that contractor finish the work in a workmanlike manner according to standard practices. But we agree with the trial court that it was up to homeowners to establish the ground level with the finish grading, and they failed to do so. In the absence of a final ground level, contractor was not in a position to cut off the insulation, *722 a task that would have taken very little time.
¶ 14. Homeowners further argue that they were entitled to take advantage of the safe harbor provision of the Prompt Payment Act and withhold payment for items about which there was a good faith dispute. See 9 V.S.A. § 4007(a); Fletcher Hill, Inc. v. Crosbie, 2005 VT 1, ¶ 7, 178 Vt. 77, 872 A.2d 292. The problem with this theory is that the statute allows a homeowner to withhold "the value of any good faith claims against . . . contractor." 9 V.S.A. § 4007(a). Here, homeowners withheld far more than the value of their claims. Moreover, they did not seek a finding that they acted in good faith, and the court did not make such a finding. We cannot therefore conclude that this defense is available.
¶ 15. Homeowners' lack of a request for specific findings also undermines their assertion that the trial court's finding on contractor's workmanship was "impermissibly conclusory." Though proposed findings are not required at trial, the purpose of proposed findings, consistent with the purpose of Vermont Rule of Civil Procedure 52(a) generally, is to "encourage[] . . . thorough sifting and evaluation of evidence by the trial courts." Reporter's Notes to 1987 Amendment, V.R.C.P. 52(a). To effectuate this purpose, the Notes expressly allow verbatim adoption of proposed findings by the court, if they are supported in the record. Id. It follows, then, that greater specificity in a trial court's order may be required where the parties submit proposed findings of itemized facts. Here, by contrast, homeowners submitted no such detailed statement of proposed findings. As noted above, the. court found that "[contractor] performed his work in a good and workmanlike manner." While that finding may be general in nature, it encompasses the complaints outlined by homeowners. The fact that the trial court judge did not itemize the construction complaints in his order does not make his finding on workmanship "impermissibly conclusory," particularly where homeowners did not themselves itemize the issues at stake. See Wells v. Village of Orleans, Inc., 132 Vt. 216, 220, 315 A.2d 463, 466 (1974) (stating, in a case in which the parties declined to request findings, that "[n]evertheless, the court chose to make findings, but did not specifically find on [a number of specific] issues . . . and, under the circumstances of the case, was under no obligation to do so."); In re. Heath, 128 Vt. 519, 523, 266 A.2d 812, 815 (1970) (noting that "[a] general finding in favor of one party or another is a finding of every special fact necessary to sustain it and is conclusive as to such facts, if there is evidence to support a finding of their existence.").
¶ 16. The remaining arguments cObcern the additional amounts awarded as a result of the finding of a violation of the Prompt Payment Act. Homeowners argue that the superior court made a "significant procedural error" that will "seriously prejudice their rights to keep their home" in its award of attorney's fees to contractor. Specifically, they claim that the award violated Rule 54(d)(2), because the court included attorney's fees in its damages judgment rather than awarding them in a separate judgment. The effect, homeowners argue, is that attorney's fees are incorporated "into the underlying judgment[,] which becomes secured by a statutory mortgage, thereby circumventing [homeowners'] homestead rights."
¶ 17. Rule 54(d) was amended in 1996 to provide specific procedures for postjudgment claims for attorney's fees. Reporter's Notes to 1996 Amendment, V.R.C.P. 54(d). Under the amendment, such claims are made by motion filed within *723 fourteen days of the entry of the judgment. Id. 54(d)(2)(A)-(B). Any party has an opportunity for "adversary submissions," and the court must find the facts, state its conclusions of law, and enter "a separate judgment" with respect to the fees. Id. 54(d)(2)(C). The rule reflects that in most cases it is efficient to wait for a post-judgment motion. See Murphy v. Stowe Club Highlands, 171 Vt. 144, 162, 761 A.2d 688, 701 (2000) (describing procedural and administrative benefits of having. separate determinations as to the amount of attorney's fees).
¶ 18. In this case, however, the superior court, knowing that contractor's entitlement to attorney's fees was a large issue dividing the parties, decided it was better to address the attorney's fees issue during the bench trial. Homeowners have seized on the separate judgment requirement in the rule. They assert that the court is prohibited from addressing attorney's fees in the main judgment in the litigation. Their reason for making this claim is that they believe that a separate judgment for attorney's fees will have a lower priority in any foreclosure action than the homestead interest or any separate mortgage interest if contractor seeks to collect his award through a sale of homeowners' residence.
¶ 19. We agree that the superior court violated Rule 54(d)(2), but because we find no prejudice from the violation, we decline to disturb the judgment on this basis. In reaching this decision, we emphasize that this is a pure question of procedure, unrelated to homeowners' priority concerns. The fact that the superior court issues one judgment or two does not resolve whether the homestead exemption takes priority over the award of fees.
¶ 20. Additionally, contractor seeks an increase in the award of attorney's fees for hours expended in this appeal and for fees incurred in connection with homeowners' post-judgment attempt to discharge the judgment debt in bankruptcy. Claims for attorney's fees for an appeal must be made in the trial court. V.R.A.P. 39(t). In addition, claims for fees with respect to post-judgment activity must be made in the trial court.
¶ 21. Finally, we acknowledge the filing of an amicus brief by the Vermont Bankers Association and the Connecticut Attorneys Title Insurance Corporation. Their brief in support of homeowners focuses on the priority of interests in real property and advocates limitations on the scope of a mechanics lien recorded prior to a mortgage. These organizations are concerned about "a contractor's judgment lien [being] significantly greater than the pre-judgment attachment approved by the trial court or the contract balance owed by a property owner to a contractor" due to the potential addition of interest, statutory penalties, and attorney's fees.
¶ 22. Except in rare circumstances, our rules do not allow amicus curiae to raise issues for the first time on appeal. See V.R.A.P. 29. In any event, the concerns expressed by amicus curiae are premature, as they relate to a judgment-enforcement phase that this litigation has not reached. We decline to address them.
Affirmed; contractor's request for additional attorney's fees is remanded to the superior court.
NOTES
[*] Homeowners did not take issue with this characterization of their responsibilities. They focused instead, as they do on appeal, on contractor's work.