2008 VT 109

**B & F LAND DEVELOPMENT, LLC v. Geoffrey T. STEINFELD**

[966 A.2d 127]

No. 07-252

¶ 1. August 13, 2008. Plaintiff B & F Land Development, LLC raises several claims of error arising out of a contract dispute with an excavation contractor, defendant Geoffrey Steinfeld. B & F's complaint against Steinfeld alleged that he: (1) negligently constructed a roadbed for B & F; (2) breached his contract with B & F; (3) converted 1,500 cubic yards of gravel; (4) was unjustly enriched by removing the gravel; and (5) violated Vermont's Consumer Fraud Act. Steinfeld counterclaimed for $10,140 in unpaid bills for excavation work, plus costs, prejudgment interest, and attorney's fees. The trial court granted summary judgment to Steinfeld on the negligence and consumer-fraud claims and dismissed them; the remaining claims were tried to a jury over two days. The jury returned verdicts for Steinfeld on all of the claims, and judgment was ultimately entered in his favor. This appeal followed. We affirm.

¶ 2. The pertinent facts may be briefly recounted. In 2003 the parties entered into a contract under which Steinfeld would perform certain excavation services for B & F, and would also provide materials related to the work. B & F is a real-estate developer, and Steinfeld is a sole proprietor whose business is excavation and logging. Part of the contracted work was to excavate a roadbed and underground utility lines to service four custom homes that B & F planned to build in Manchester, Vermont. Steinfeld performed some excavation and road-building work in the spring and summer of 2004, and presented B & F with a first invoice in April 2004, which B & F promptly paid. This dispute arises largely out of a later invoice, submitted by Steinfeld to B & F in person at the site on June 12, 2004. That invoice, according to Steinfeld, carried forward the $9,120 balance due on a June 8 invoice, and also included new charges of $1,020. B & F did not immediately object to the invoice, but at a jobsite meeting on July 7, 2004,

accused Steinfeld of wrongfully taking gravel from the worksite.

¶ 3. The invoice was still unpaid when B & F ultimately filed suit in July 2005, asserting claims against Steinfeld for negligence, breach of contract, conversion, and unjust enrichment. Steinfeld counterclaimed to demand payment of the outstanding invoice. The complaint was then amended to include a claim under the Consumer Fraud Act, 9 V.S.A. §§ 2451-2480n. Steinfeld answered the amended complaint, and filed an amended counterclaim including a claim under the Prompt Payment Act, 9 V.S.A. §§ 4001-4009. B & F's negligence and consumer-fraud claims were dismissed at the summary-judgment stage, and the other claims and counterclaims were tried to a jury over two days. The jury found for Steinfeld, awarding him $10,140 on his counterclaim. Steinfeld then filed a motion for attorney's fees and prejudgment interest, which the trial court granted by written order. This appeal followed. Further facts are adduced as necessary in our discussion of the individual claims.

¶ 4. First, B & F claims that the trial court erred in granting summary judgment to Steinfeld on B & F's consumer-fraud claim. B & F asserts that the trial court erred in concluding (1) that B & F was not a "consumer" as defined in 9 V.S.A. § 2451a, and (2) that the dispute was a classic breach-of-contract suit not subject to the Act, even if B & F were found to be a "consumer." Either of the trial court's conclusions is sufficient to support a grant of summary judgment; thus, we can affirm on either basis.

¶ 5. B & F's briefing concerning the consumer-fraud claim is insufficient. B & F's response to the trial court's conclusion that this was essentially a contract dispute — and therefore not subject to the CFA — is, in its entirety, that "the Court's conclusion was erroneous given the nature of the allegations of the Appel-

lant's claims and that the Court's determinations in regard to the [CFA] and decision not to charge the jury on those claims amounted to reversible error." This bare claim of error does not approach the standards set by Rule 28(a)(4) of the Vermont Rules of Appellate Procedure, which states:

> The argument shall contain the issues presented, how the issues were preserved, the contentions of the appellant *and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on.*

(Emphasis added.) B & F's brief discloses neither how this issue was preserved nor the reasons for B & F's contentions, cites no authority of any kind, and does not cite the record.[*] As noted, the trial court announced two reasons for granting summary judgment, and either reason was sufficient. In order for us to reverse the summary judgment, B & F would have had to show that *both* of the trial court's rationales were erroneous. It has failed to do so. See *In re S.B.L.*, 150 Vt. 294, 297, 553 A.2d 1078, 1081 (1988) ("It is the burden of the appellant to demonstrate how the lower court erred warranting reversal.").

¶ 6. B & F next raises two claims of error relating to purported jury bias. First, B & F argues that the jury was biased against plaintiff by defense counsel's reference to a "mafia of dumptrucks" during closing argument. The two principal owners of B & F are, according to B & F, of Italian descent, and residents of Long Island. Steinfeld is a lifelong Ver-

---

[*] Nor does the printed case submitted by B & F appear to contain sufficient portions of the record to present fully the questions raised on appeal. See V.R.A.P. 30(a).

mont resident; the record does not reveal his lineage. While we take very seriously claims of regional or ethnic bias in our judicial system, the claim here was not preserved for appeal. B & F did not object to the statement when it was made, or at any time prior to this appeal. See *Agency of Natural Res. v. United States Fire Ins. Co.*, 173 Vt. 302, 311, 796 A.2d 476, 482 (2001).

¶ 7. Even if the claim were properly preserved for appeal, it is without merit. B & F's theory at trial was that Steinfeld had converted a tremendous amount of gravel — 1,500 cubic yards — by transporting it offsite. Both sides agree that, to do so, he would have had to make a huge number of trips with dump trucks full of the material. It is also undisputed that Steinfeld does not himself own a dump truck, and that he would therefore have had to retain the services of one (or, more likely, several) such trucks in order to remove this much material from the site. The printed case contains no evidence that this happened. The "mafia of dump trucks" statement was a reference to Steinfeld's alleged activities, not to B & F or its principals. Steinfeld's counsel's choice of words may have been odd, but their use appears only to convey that the removal of such a large amount of gravel would have required a large number of trucks illicitly working in concert. As noted, B & F did not object to the statement when made, and the judge did not strike the statement on his own motion. There was no error.

¶ 8. B & F's second basis for claiming jury bias is that the jury deliberated for only half an hour before returning a verdict, after a two-day trial. The claim is both inadequately briefed and entirely disposed of by our holdings in *State v. Morrill*, 127 Vt. 506, 253 A.2d 142 (1969), and *State v. Lumbra*, 122 Vt. 467, 177 A.2d 356 (1962), neither of which B & F cites on appeal. In *Morrill*, we upheld a crimi-

nal jury verdict arrived at after half an hour, holding that "[t]here is no law which requires a jury to deliberate any longer than may be necessary to agree upon a verdict." *Morrill*, 127 Vt. at 509, 253 A.2d at 144. Similarly, in *Lumbra*, we upheld a verdict arrived at after eight minutes of deliberation. *Lumbra*, 122 Vt. at 469-70, 177 A.2d at 358. B & F does not advance any argument as to why these cases are wrongly decided or inapplicable in the civil context. Indeed, B & F does not cite a single case or other authority in support of this claim. We find no error.

¶ 9. B & F also takes issue with four aspects of the judgment in favor of Steinfeld's counterclaim under the Prompt Payment Act, 9 V.S.A. §§ 4001-4009. The first claim is that "the jury erred in determining that [B & F] owed [Steinfeld] $10,140 on its counterclaim." Although B & F's brief does not explain the reasons for the claim and lacks reference to any authority, statutory or otherwise, the idea seems to be that B & F had a good-faith basis for withholding part of the money that would otherwise have been due to Steinfeld because of Steinfeld's alleged conversion of the gravel. See 9 V.S.A. § 4007. B & F's sole support for this contention is the trial testimony by one of the principals of B & F. There was, however, a factual dispute on this issue at trial, and B & F did not object either to the special verdict form used to arrive at the $10,140 figure, or to the jury charge. Nor did B & F file any motions with the court asking that it reconsider the jury's verdict on the counterclaim. See V.R.C.P. 59. Thus, we do not reach the claim on appeal. See *Agency of Natural Res.*, 173 Vt. at 311, 796 A.2d at 482.

¶ 10. To the extent that the second asserted error regarding the counterclaim — that the jury's verdict "was unsupported by the evidence or contrary to the evidence at trial" — is distinct from

the claim discussed in the preceding paragraph, and assuming it is adequately presented for our review, it is without merit. B & F's argument is simply that the jury improperly chose to credit Steinfeld's witnesses and not B & F's; the briefing is a recitation of the testimony favorable to B & F. It is black-letter law that assessing witness credibility and weighing the evidence are the unique province of the jury. See *Lockwood v. Lord*, 163 Vt. 210, 216, 657 A.2d 555, 559 (1994). We will affirm a jury verdict when it "can be justified upon any reasonable view of the evidence." *Jackson v. Rogers*, 120 Vt. 138, 150, 134 A.2d 620, 627 (1957).

¶ 11. The jury's verdict here is easily justified by a reasonable view of the evidence. For each witness whose testimony B & F now cites, there was contrary testimony from a witness for Steinfeld. That testimony amply supports the conclusion that Steinfeld did not convert any gravel from the site. The jury simply chose to credit the testimony favoring Steinfeld rather than that favoring B & F. This is not error; it is the function of a jury.

¶ 12. B & F's next two claims of error relate to the attorney's fees awarded on Steinfeld's counterclaim. First, B & F contends — again citing no authority or record evidence — that the fees were excessive. Prior to appeal, this claim was not advanced to the trial court in any form. After trial, Steinfeld properly filed a motion for attorney's fees, costs, interest, and litigation expenses. See V.R.C.P. 54(d). Steinfeld also submitted the affidavit of an experienced Vermont trial attorney who had reviewed counsel's billing, the pleadings, and discovery materials, and found them to be "very reasonable and necessary." B & F did not challenge the affidavit, and the trial judge granted the fees by written order. B & F did not request a hearing on attorney's fees; as Steinfeld notes, B & F "was completely silent on this issue until this appeal." See *Naylor v. Cusson*, 2007 VT 108, ¶ 17, 182 Vt. 627, 940 A.2d 717 (mem.).

¶ 13. B & F having made no argument to the trial court regarding the asserted excessiveness of the fees, we are in no position to rule on the question in the first instance, particularly in light of the cursory briefing B & F has submitted. We find no error in the trial court's determination that the fees were reasonable and necessary.

¶ 14. B & F also claims that Steinfeld was not entitled to all of his attorney's fees, because many of those fees arose from defending against B & F's claims rather than advancing Steinfeld's counterclaims. This assertion was apparently made at trial, although in a "conclusory" fashion, according to the trial court. Moreover, on appeal B & F does not cite any written submissions it made to the trial court on the point, indicate what specific claims of error it has preserved for appeal, or state how it preserved them. See V.R.A.P. 28(a)(4). Our review is limited by the cursory briefing. See *S.B.L.*, 150 Vt. at 297, 553 A.2d at 1081 ("We will not comb the record searching for error."). As the ensuing discussion demonstrates, we find no error.

¶ 15. B & F generally contends that the legal fees incurred by Steinfeld in defending against B & F's claims were distinct from the fees incurred prosecuting Steinfeld's counterclaim. But the distinction is not reflected in the record. The central issues contested at trial were common to B & F's claims and Steinfeld's counterclaims. Those issues were, speaking generally: (1) whether there was gravel in the roadbed; and (2) whether Steinfeld could, or did, remove it. These two questions were fundamental to the jury's determination of whether Steinfeld had breached the contract, converted the gravel, or been unjustly enriched by converting the gravel. Resolution of these core facts depended on witnesses for each side, including Steinfeld's expert, who

testified to the nature of the soils at the site.

¶ 16. The same evidence was central to resolving Steinfeld's counterclaim under the Prompt Payment Act. Steinfeld's claim was that he did not receive $10,140 that he was due under the excavation contract. B & F's sole defense to the counterclaim was that B & F had a good-faith basis to withhold payment because Steinfeld had converted 1,500 cubic yards of gravel. Plainly, the evidence concerning whether there was gravel on the site and whether Steinfeld wrongfully removed it was also of central importance to the counterclaim. The trial court correctly concluded that the attorney's fees question was largely controlled by our holding in *The Electric Man, Inc. v. Charos*, 2006 VT 16, ¶¶ 10-11, 179 Vt. 351, 895 A.2d 193. In that case, we held that when "the claims at issue share a common core of facts" and "[v]irtually all of the evidence is relevant to all of the claims," trial courts should not attempt to apportion the attorney's fee award among the different claims. *Id.*; see also *L'Esperance v. Benware*, 2003 VT 43, ¶¶ 24-25, 175 Vt. 292, 830 A.2d 675 (same). Thus, there was no error in the trial court's conclusion that Steinfeld was entitled to recover all of his claimed attorney's fees.

¶ 17. B & F's final claim of error is that the trial court erred in awarding prejudgment interest. B & F's position on appeal is that there was a real dispute at trial over the amount owed on the counterclaim, and that Steinfeld was therefore not entitled to prejudgment interest. Prejudgment interest is available as of right "when the principal sum recovered is liquidated or capable of ready ascertainment" at the time of the breach or default giving rise to the obligation to pay. *Newport Sand & Gravel Co. v. Miller Concrete Constr., Inc.*, 159 Vt. 66, 71, 614 A.2d 395, 398 (1992). "The principal rationale for an award of prejudgment interest as of right is that, where damages are

liquidated or determinable by a reasonably certain standard of measurement, the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages." *Agency of Natural Res. v. Glens Falls Ins. Co.*, 169 Vt. 426, 435, 736 A.2d 768, 774 (1999) (quotation omitted). A court may also award prejudgment interest in its discretion where a reasonable method can be used to calculate the prejudgment interest. *Estate of Fleming v. Nicholson*, 168 Vt. 495, 503, 724 A.2d 1026, 1032 (1998).

¶ 18. In support of the contention that prejudgment interest should not have been awarded here, B & F cites *J.A. McDonald, Inc. v. Waste Systems International Moretown Landfill, Inc.*, 247 F. Supp. 2d 542 (D. Vt. 2002). Although that federal case correctly recounts our prejudgment-interest law as a general matter, it is factually inapposite to the case at bar. In *McDonald*, the jury award apparently included undifferentiated amounts for several claims, a number of which did not "create an appropriate basis for a prejudgment interest award," and the district court noted that it had "no way of knowing whether these damages were included in the jury's award." *Id.* at 548. Thus, in *McDonald*, the court concluded that "a reasonable calculation is not possible," and "any determination of prejudgment interest on the award would be speculative and unreasonable." *Id.*

¶ 19. Here, by contrast, the jury returned a special verdict form finding for Steinfeld in exactly the amount he had requested in the Prompt Payment Act counterclaim. That amount, in turn, was exactly equal to the amount he had billed B & F for, and which B & F had declined to pay based on the alleged conversion of gravel. Although B & F now asserts that "there was a real dispute at trial over the amount, if any, owed," B & F has not cited any portion of the record supporting that contention, or stated with any particular-

ity what the dispute was. We will not, as noted above, pore over the record for unmentioned errors. *S.B.L.*, 150 Vt. at 297, 553 A.2d at 1081. B & F has not met its burden of demonstrating that the trial court erred in awarding prejudgment interest on the counterclaim damages.

¶ 20. Finally, we note Steinfeld's request that we "direct the case back to the trial court for the determination of . . . attorney's fees and costs in connection with this appeal," under V.R.A.P. 39(f). That rule, however, provides only that "[c]laims for attorneys' fees and other nontaxable expenses arising on an appeal shall be made *by motion in the trial court* pursuant to Rule 54(d)(2) of the Vermont Rules of Civil Procedure within 14 days after issuance of the mandate." V.R.A.P. 39(f) (emphasis added). Steinfeld is free to make such a motion, and the trial court needs no direction from this Court to rule on it.

*Affirmed.*