WSAA v. Lyon, No. 100-4-12 Cacv (Teachout, J., April 19, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

**SUPERIOR COURT**                                                    **CIVIL DIVISION**
**Caledonia Unit**                                           **Docket # 100-4-12 Cacv**
                                                        **(Appeal from Docket #215-8-11 Casc)**


**West Shore Access Association**
         **Appellee**


     **v.**


**Peter E. Lyon**
         **Appellant**


## SMALL CLAIMS APPEAL
### Decision


Defendant/Appellant Peter Lyon appeals a small claims judgment issued on March 21, 2012. The Small Claims Court awarded $3,878.75 to Plaintiff/Appellee West Shore Access Association (WSAA) after determining that Mr. Lyon converted a gate that was the personal property of WSAA. On appeal, Mr. Lyon argues that the Small Claims Court erred in concluding that WSAA owned the gate and that he did not have permission to remove the gate. Alternatively, he argues that the conversion was not serious enough to warrant holding him liable. Finally, he argues that the Court erred in awarding the full replacement cost of the gate.

In appeals from Small Claims Court, the Superior Court's review is based on the record below and is limited to questions of law. 12 V.S.A. § 5538; V.R.S.C.P. 10. This Court has reviewed the transcripts of the hearings held in Small Claims Court and both parties' memoranda of law.

Facts

The Small Claims Court found the following facts. The gate in question was formerly located at the junction of Vermont Route 232 and West Shore Drive in Groton, Vermont. West Shore Drive is a private right-of-way located on land owned by the State of Vermont. It provides access to several residential lots on the west shore of Lake Groton. Each landowner along the west shore of the lake has an easement to pass over West Shore Drive. Mr. Lyon owns one of the lots on the lake and has an easement to use the road.

In the late 1980s, WSAA was formed to provide easement holders with an organization to maintain West Shore Drive. WSAA did not hold any easement or other ownership interest in the road. Mr. Lyon was one of the original organizers of WSAA, but he left the association in 2005. WSAA currently has 25 members, including Paul Sykas and David Smith.

In the mid 1990s, the State authorized construction of a new segment of West Shore Drive that would connect to Route 232. The State authorized Mr. Lyon to design and coordinate

the construction of the new road segment. Mr. Lyon was a member of WSAA at the time. The State paid for the construction, and intended the road to benefit WSAA.

The State then sought to exchange rights-of-way with the landowners, substituting access along the new segment for the access previously provided along the old road. Mr. Lyon exchanged his easement with the State so he could use the new segment of road.

A gate was installed near the entrance of the road where it intersected with Route 232. Mr. Lyon arranged for the design and installation of the gate in 1999 at the State's expense. The Small Claims Court found that the State installed the gate for the sole use and benefit of WSAA and does not consider it to be State property. After its installation, the gate was not closed at any time.

According to Mr. Lyon, there was a lease with the State regarding the gate that required removal of the gate after 10 years unless the State gave its permission to keep the gate in place. Mike Fraysier, the State Lands Director at the Vermont Department of Forests, Parks and Recreation, testified that he could find no record of any 10-year lease regarding the gate. Mr. Lyon was unable to produce a written agreement regarding the terms of the gate's installation. Mr. Fraysier testified that there is no regulation concerning gates within State forests. The Small Claims Court concluded that there was no lease governing the gate.

After the new road and gate were installed, there was an internal dispute among the members of WSAA. As a result, Mr. Lyon and some other members left and formed a second road association called Functional Use of Nature at Groton Corporation.

In 2010, Mr. Lyon stopped by Mr. Fraysier's office to ask whether the gate was State property. Mr. Fraysier told Mr. Lyon that the State did not consider the gate to be State property. He told Mr. Lyon that Mr. Lyon could do what he wished with the gate as long as he got prior permission from WSAA.

Mr. Lyon told a man named Tim Starr that he could remove the gate and use it for his own purposes. Mr. Starr removed the gate in the summer of 2010, modified it, and placed it in another location, making it impossible to reinstall at its former location on West Shore Drive. Mr. Lyon received no compensation for the gate. He did not notify WSAA that he was having the gate removed. The Small Claims Court found that the State never told Mr. Lyon that the gate was his property or that he could remove the gate without WSAA's permission.

WSAA obtained an estimate for replacing the gate, including fabrication, priming, painting and delivery. A 54-foot replacement gate would cost $3,800.00.

The Small Claims Court ruled that Mr. Lyon converted the gate. The Court found that the State paid for the gate and gave it to WSAA. It also found that the work performed by Mr. Lyon in planning the road and installing the gate was performed in his capacity as the president of WSAA, not as an individual easement holder. Thus WSAA, and not Mr. Lyon, owned the gate. The Court held that Mr. Lyon had exercised dominion over the gate in exclusion and defiance of WSAA's right by telling Mr. Starr to remove the gate. The subsequent modification of the gate made it impossible for WSAA to use the gate, constituting a dispossession. Accordingly, the Court awarded damages of $3,878.75 for the replacement cost of the gate and court costs.

<u>Analysis</u>

Mr. Lyon advances several arguments on appeal. First, he argues that the evidence did not support the Small Claims Court's finding that WSAA owned the gate, as required to prove conversion.

"To establish a claim for conversion, the owner of property must show only that another has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title." *Montgomery v. Devoid*, 2006 VT 127, ¶ 12, 181 Vt. 154. The Vermont Supreme Court ruled that its definition of conversion is consistent with that of the Restatement (Second) of Torts § 222A(1), which defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Id.*

Contrary to Mr. Lyon's argument, WSAA did present evidence that it had an ownership interest in the gate. Although there was no written agreement regarding the gate, and WSAA held no easement rights regarding the right-of-way, the weight of evidence indicates that WSAA owned or had the right to control the gate. Mr. Smith testified that WSAA owned the gate. Mr. Fraysier testified that the State claimed no interest in the gate and considered WSAA to be the owner of the gate. Furthermore, Mr. Lyon stated that he did not consider the gate to be his personal property. Tr. 74:14–15. This evidence was adequate to support the Court's finding that WSAA owned the gate.

Moreover, WSAA did not have to prove that it held full legal title to the gate in order to bring an action for conversion; all WSAA had to prove was that it had the right to possess the gate. See *Paska v. Saunders*, 103 Vt. 204, 217 (1931) ("Actual possession of personal property is enough, prima facie, to sustain an action of trover against anyone except the true owner . . . .")[1]; Restatement (Second) of Torts § 222A(1) (defining conversion as serious interference "with the right of another to control" the property). Here, the evidence supported a finding that WSAA had a possessory interest in the gate that was superior to Mr. Lyon's interest, rendering him subject to suit for conversion.

Next, Mr. Lyon argues that the Court erred in finding that he acted solely as WSAA's agent when he oversaw the construction of the new road and gate in 1999. The Court made this determination in response to Mr. Lyon's argument that he held an ownership interest in the gate by virtue of his labor in designing and constructing the road and gate. The Court stated that it did not believe that Mr. Lyon performed the work as an individual easement holder, finding instead that he was acting on behalf of the association when he had the gate installed. It concluded that as an agent, he was not entitled to retain anything acquired by him in the performance or the violation of his agency. See *Mischke v. Mischke*, 571 N.W.2d 248, 256 (Neb. 1997).

Any error on this point is harmless. As discussed above, the evidence supports the determination that WSAA, and not Mr. Lyon, owned or had the right to control the gate. Mr.

_____

[1] Trover is a form of conversion.

3

Lyon admitted at the hearing that he did not believe he personally owned the gate. Accordingly, whether Mr. Lyon was acting as WSAA's agent at the time the gate was installed is irrelevant to WSAA's conversion claim.

Next, Mr. Lyon argues that he cannot be held liable for conversion where he received permission from the State before removing the gate. However, the State had disclaimed any interest in the gate. It considered the gate to be the property of WSAA. It is true that Mr. Fraysier told Mr. Lyon that the State had no problem with the gate being removed, but he also advised Mr. Lyon to seek approval from WSAA before acting. See Tr. 7. The State's "permission" was conditioned on approval from WSAA and does not shield Mr. Lyon from liability for conversion.

Mr. Lyon further claims that the Small Claims Court erred in failing to evaluate the factors set forth in Restatement (Second) of Torts § 222A(2) to determine whether his interference with WSAA's property rights was serious enough to warrant liability for damages. See *Montgomery*, 2006 VT 127, ¶ 13 (analyzing § 222A(2) factors to determine whether defendant should be held liable for conversion). Section 222A(2) provides:

> In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
>    (a) the extent and duration of the actor's exercise of dominion or control;
>    (b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
>    (c) the actor's good faith;
>    (d) the extent and duration of the resulting interference with the other's right of control;
>    (e) the harm done to the chattel;
>    (f) the inconvenience and expense caused to the other.

Restatement (Second) of Torts § 222A(2). No one factor is predominant, and the list is not meant to be exclusive. *Id*. cmt. d. Liability for conversion is usually limited to "serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value." *Id*. cmt. c.

The Small Claims Court did not specifically address each factor listed in § 222A(2). Therefore, this Court must analyze whether Mr. Lyon's interference with WSAA's interest in the gate was serious enough to warrant holding him liable. See *Montgomery*, 2006 VT 127, ¶ 14.

Mr. Lyon argues that he should not be held liable because he acted in good faith. To show this, he asserts that he reasonably believed that he owned the gate. Yet Mr. Lyon's own testimony belies this assertion. He testified that he did not believe that he personally owned the gate, but that there was some kind of lease agreement where the gate had to be removed after ten years. His claim of good faith is, however, supported by the following facts: he checked with the State before removing the gate, nobody else was involved in the installation of the gate, it had not been used over the preceding ten years, and he did not receive any compensation for disposing of it.

While Mr. Lyon's good faith may weigh in his favor, this is not the only factor the court must consider. First, the extent and duration of his exercise of control was brief, but it resulted in

4

the complete dispossession of the gate. On the whole, this factor weighs against Mr. Lyon. The second factor—Mr. Lyon's intent to exercise a right in fact inconsistent with another's right of control—also weighs against him. Mr. Lyon intended to remove the gate and dispose of it, and he felt that WSAA had no right to tell him otherwise. This was not an inadvertent interference. Likewise, the fourth, fifth and sixth factors weigh against Mr. Lyon. Not only did Mr. Lyon have the gate removed, but it was subsequently modified so that it could not be used in its original location. The interference with the gate was total and permanent. The harm to the chattel was great, because the gate was rendered useless to WSAA. Mr. Lyon argues that the gate served no purpose because it was never closed, but other landowners considered it useful as a visual indication to the public that West Shore Drive was a private road. Tr. 36, L. 14–16. Moreover, WSAA will have to pay $3,800 to have a gate of similar size and shape fabricated and installed. Taken together, these factors justify holding Mr. Lyon liable for his removal of the gate.

Finally, Mr. Lyon argues that the Small Claims Court erred in awarding full replacement value for the gate, which had not been used and was more than 10 years old when it was removed. "The measure of damages for conversion is generally the value of the thing converted, measured by its cost to produce or fair market value, at the time and place of the conversion." *Maguire v. Gorruso*, 174 Vt. 1, 8 (2002). The Small Claims Court found that the current fair market value of a gate, or the cost to produce one in Groton, was $3,800. Mr. Lyon did not present any evidence to rebut this claim, nor does he point to any error in law. The evidence supports the Court's damages award.

ORDER

For the foregoing reasons, the Judgment of the Small Claims Court is affirmed.


Dated at St. Johnsbury, Vermont this 19th day of April, 2013.


_____
Mary Miles Teachout
Superior Judge

5