HON. JAMES BARRETT,
HON. ASAHEL PECK,
HON. WILLIAM C. WILSON, } ASSISTANT JUDGES.
HON. HOYT H. WHEELER,

---

NATHANIEL W. FRENCH, GEORGE F. FRENCH, AND SAMUEL G. FRENCH *v.* EZRA S. FREEMAN, APPELLANT.

*Manure. Title. Realty. Personalty. Jurisdiction. Justice of the Peace.*

When manure lies upon the soil where it was first dropped, it is a part of the soil, like a clod of earth, loose stones, or fallen and decaying vegetation, and is real estate. When severed from the soil, gathered up, and secured for use elsewhere, it is merely a personal chattel.

A sale and conveyance of a farm would not carry with it an accumulation of manure removed from the barn-yard, and piled in a heap on the farm, which the grantor had previously sold, and which had been so piled up for the vendee, but had not been re-moved. Being sold at the time of the conveyance of the farm, it was not then legally appurtenant to the farm, if it ever had been.

An action of trover in favor of the grantee of the farm and against the purchaser of the manure, for the removal of it, would not involve the title to land so a justice of the peace before whom the action was brought would not have jurisdiction.

TROVER, for seventy-five loads of manure, alleged to have been converted by the defendant, on the 15th day of March, 1868, of the value of $100.

The action was commenced before a justice of the peace, and came to the county court by appeal. The writ is dated March 28, 1868. Plea, the general issue. Trial by jury, September term, 1869, STEELE, J., presiding.

It appeared, on trial, that Mills D. Webb had owned a farm in Guildhall, and had occupied it for about six years before and up to the time of the commencement of this action. The farm was new, and Webb accumulated manure at the barn and in the barn-yard, and about the buildings, for several years, and did not put it upon the land. He testified that he usually bought hay and drew upon the farm every year to the amount of about a third of what he used for his stock. The rest of said manure was from the crops grown on the place. In Nov., 1867, Webb sold to the defendant all the manure on the farm, for the sum of $60, fifty dollars of which the defendant paid Webb within a week after the trade, and the rest he paid after this suit was commenced. As a part of this trade, Webb agreed to scrape up and draw the manure, in question in this suit, from the barn-yard and about the buildings where it lay, to a place on the farm, in a field near the buildings and next the barn-yard, and there pile it up so that it could be drawn off in the winter. Webb did this in November, 1867, and then defendant paid Webb said $50.

The defendant in March, 1868, while Webb was still living on said farm and before the date of the writ, drew away 23 loads of the manure from said pile. On the part of the plaintiffs it appeared that they bought said farm of Webb, January 31, 1868, the deed thereof containing full covenants of warranty, and signed by Webb and his wife, and recorded February 8, 1868. No reservation or mention was made of said manure in the trade between Webb and the plaintiffs; nor were the plaintiffs aware of any sale of the manure by Webb to any one. Before the defend-

ant drew away the manure he was informed of plaintiffs' purchase of the farm, and was forbidden to draw the manure by plaintiffs. Plaintiffs claimed the manure solely on the ground that it went with the farm in their purchase. The defendant's counsel filed a motion, requesting the court to dismiss the action for the reason that it appeared that the title to real estate was in question, and that therefore the justice of the peace had no jurisdiction. The court overruled this motion and the defendant excepted.

The foregoing are all the facts which appeared, there being no conflicting testimony, except as to damages. Each party insisted that the court should direct a verdict. Upon the facts aforesaid, the court ordered a verdict for the plaintiffs, refusing to order a verdict for defendant, as requested by him, and left it to the jury to assess the damages, which they found to be $40.60. To these decisions and rulings of the court the defendant excepted.

*Ray & Ladd*, for the plaintiffs, cited *Stone* v. *Proctor*, 2 Chip., 113 ; *Wetherbee* v. *Ellison*, 19 Vt., 379 ; *Kittredge* v. *Woods*, 3 N. H., 503 ; *Conner* v. *Coffin*, 22 N. H., 538 ; *Plumer* v. *Plumer*, 30 N. H., 558; *Daniels* v. *Pond*, 21 Pick., 367 ; *Lassell* v. *Reed* ,6 Greenleaf, 222 ; *Parsons* v. *Camp*, 11 Conn., 525 ; *Lewis* v. *Lyman*, 22 Pick., 437 ; 1 Washburn on Real Prop., 5, § 15 ; Taylor's Landlord and Tenant, § 541.

*Fletcher & Haywood*, for the defendant, cited 30 N. H., 558 ; *Wing* v. *Gray*, 36 Vt., 261 ; *Folsom* v. *Moore*, 19 Me., 252 ; *Wetherbee* v. *Ellison*, 19 Vt., 379 ; *Houston* v. *Howard*, 39 Vt., 54 ; *Yale* v. *Seeley*, 15 Vt., 221 ; *Buck* v. *Pickwell*, 27 Vt., 166 ; *Stephenson* v. *Clark*, 20 Vt., 626 ; *Wilson* v. *Cooper*, 12 N. H., 654 ; *Smith* v. *Surman*, 9 Barn. & Cress., 561 ; *Pike* v. *Morey*, 32 Vt., 37 ; *Hill* v. *Wentworth*, 28 Vt., 428 ; *Peck* v. *Batchelder*, 40 Vt., 233 ; *Noble* v. *Sylvester*, 42 Vt., 146 ; *Fitch* v. *Burk*, 38 Vt., 683.

The opinion of the court was delivered by

WHEELER, J.   Manure is not necessarily real estate ; it may be real or personal according to the circumstances under which it is placed.   When lying upon the soil, where it was first dropped,

without severance, it is a part of the soil, like a clod of earth, loose stones, or fallen and decaying vegetation, and is real estate. When severed from the soil, gathered up, and secured for use elsewhere, it is merely a personal chattel.   This action is trover for so many loads of manure : to entitle the plaintiff to recover, it was incumbent on him to show that he had a general or special property in the manure, with the right to its possession, at the time of its conversion by the defendant.   To show property in the manure it was not necessary for him to show that he had had property in some real estate of which the manure had been a part while he owned it, but he might make title to the manure in the same way that he might to a horse, a jewel, or any personal chattel.   It was no more necessary for the plaintiff in this action to show title all the way back to real estate, to which the manure was once appurtenant, or of which it once formed a part, than it would have been in an action to recover for the conversion of so many bushels of fruit, or loads of wood, to show title to the land on which the fruit grew, or from which the wood was cut.   In the progress of the trial, title to land on which the manure had once been was shown by the plaintiffs, but the validity of that title was not concerned in the trial.   The question was not whether the plaintiffs had title to that land, but whether the manure at the time it was taken by the defendant was a part of the land to which the plaintiffs' title was unquestioned.   Under these circumstances, the title to land was not concerned so but that the justice before whom the action was commenced had jurisdiction of it and the county court appellate jurisdiction.   The motion to dismiss was therefore properly overruled.   The manure in question had never gone back to the soil of the farm and become a part of the land itself.   It was the accumulation of several years, and at the time the defendant purchased it of Webb, it was where it had accumulated, at the barn, in the barn-yard, and about the buildings.   At that time, whether it was an appurtenant to the farm, and would have passed by a deed of the farm from Webb, who owned both farm and manure, to a purchaser, or was merely personal property, Webb could sell it ; and when severed and delivered, if it was of the realty, or when delivered if it was merely personalty, upon his sale, the

property in it would pass to the purchaser. Webb did, then, while he owned both farm and manure, sell the manure to the defendant at the price of sixty dollars, and in pursuance of an agreement with the defendant removed it from the barn-yard and about the buildings where it then was and placed it in a large heap upon the farm near by, ready to be removed by the defendant the ensuing winter, and when that was done the defendant paid him fifty dollars of the price of it. This was a sufficient delivery if it was personalty, and a sufficient severance and delivery if it was realty, on the part of Webb, and sufficient acceptance on the part of the defendant, to vest the ownership of the manure in the defendant. *Tansley* v. *Turner*, 2 Bing. N. C., 151, 29 E. C. L., 479; *Yale* v. *Seely, et al.*, 15 Vt., 221. The land where the manure lay became, to quote from the language of Ch. J. TINDAL in *Tansley* v. *Turner*, the warehouse of the defendant. The sale and conveyance of the farm from Webb to the plaintiffs carried with the farm all things that were legally appurtenant to it at that time, but did not carry with it anything of the nature of an appurtenance merely, that Webb did not then own and could not lawfully grant, and which, therefore, was not legally an appurtenant to the farm. *Nicholas* v. *Chamberlain*, Cro. Jac., 121; *Swasey* v. *Brooks*, 34 Vt., 451. Webb did not then own this manure, and could not lawfully grant it, therefore it was not then, if it had ever been, lawfully an appurtenant to the farm, and it did not pass from Webb to the plaintiffs by force of the conveyance of the farm from him to them.

Upon these facts, the manure was not the property of the plaintiffs, therefore the defendant did not convert their manure to his use when he converted this.

Judgment reversed, and cause remanded.