# Robert W. Maguire and Robert W. Maguire, Ltd. v. Samuel J. Gorruso, Sammy G. Media Corporation

[800 A.2d 1085]

No. 01-203

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed May 3, 2002

*John J. Welch, Jr.*, Rutland, for Plaintiffs-Appellees.

*Kevin Ellicott* of *Ellicott & Ellicott, P.C.*, Rutland, for Defendants-Appellants.

**Amestoy, C.J.** Defendants Samuel J. Gorruso and Sammy G. Media Corporation appeal from a judgment, based on a jury verdict, in favor of plaintiffs Robert W. Maguire and Robert Maguire, Ltd., awarding damages of $272,000 for unfair competition and $143,000 for conversion. Defendants contend: (1) compensatory damages were unavailable as a matter of law for the common law unfair competition claim of trade name or trade dress infringement; (2) the evidence was insufficient to prove the elements of the infringement claim; (3) the court abused its discretion in denying a motion to modify the conversion award; and (4) the court erred in allowing defendant Gorruso to be held personally liable. We remit the award for conversion, and otherwise affirm the judgment.

Viewed in the light most favorable to the judgment, *Haynes v. Golub Corp.*, 166 Vt. 228, 233, 692 A.2d 377, 380 (1997), the underlying facts may be summarized as follows. For many years, plaintiffs Robert W. Maguire and Robert Maguire, Ltd. (hereafter plaintiffs or Maguire) owned and operated a weekly advertisement-based paper known as The Rutland Shopper and, later, as The Rutland Tribune. In March 1998, plaintiffs entered into a combined lease and purchase-and-sale agreement with defendants Samuel J. Gorruso and Sammy G. Media Corp. (hereafter defendants or Gorruso). The agreement provided for defendants to assume full operational control of the business, including its equipment, inventory, trade names and receivables, and to pay plaintiffs a monthly consulting fee until November 1999, when defendants would purchase the business for the sum of $628,000.

Defendants operated the business under the name The Rutland Shopper until the end of June 1999, at which time plaintiffs resumed possession and operation of the business pursuant to a subsequent agreement between the parties. Under that agreement, dated June 24, 1999, all prior contractual obligations between the parties were canceled, plaintiffs agreed to pay defendants a total of $25,000, and defendants agreed to have no further involvement with the business and to refrain from any use of the names The Rutland Shopper or The Rutland Tribune. Although the original purchase/lease agreement contained a specific noncompete clause, the June 1999 memorandum canceling the agreement lacked such a clause.

Almost immediately after the parties' June agreement, defendants moved to a separate location in Rutland and commenced publication of

an advertisement-based paper under the title Sam's Good News Shopper. Plaintiffs, in response, filed this action against defendants, alleging — among other claims — conversion of various items of property, including a customer list, computer and photographic equipment, and other hardware; unfair competition through misappropriation of business assets as well as trademark and trade dress infringement; and fraud. In addition to damages, plaintiffs sought an injunction prohibiting defendants from using the name "Shopper" in their title. Following a hearing in late July 1999, the Rutland Superior Court issued a preliminary injunction prohibiting defendants from publishing within Rutland County, during the course of the litigation, any newspaper or advertising weekly using the word "Shopper" in the masthead, or from using the same format as the The Rutland Shopper.

At the end of a five-day trial in January and February 2001, the jury returned a verdict in favor of plaintiffs, awarding damages of $143,000 for conversion of property, $272,000 for unfair competition, and $1.00 for punitive damages. The jury found in favor of plaintiffs on defendants' counterclaim for defamation. In response to defendants' subsequent motion to alter or amend, the court struck the $1.00 award of punitive damages, but otherwise denied the motion. The court subsequently entered an amended judgment in favor of plaintiffs, awarding damages totaling $415,535.18 (the conversion and unfair competition awards plus costs). This appeal followed.

Turning first to the unfair competition claim, defendants contend that equitable remedies such as injunctive relief represent the exclusive remedy under Vermont law for common law claims of unfair competition based on trade name or trade dress infringement.[1]

---

[1] Common law unfair competition includes a number of different tort theories, including "passing-off," which is in effect the common law name for trademark infringement, trade-secret violations, and misappropriation. Prosser & Keeton, The Law of Torts § 130, at 1015-20 (5th ed. 1984). Trademark infringement, in turn, includes a variety of deceptive acts, such as false or misleading advertising, trade name infringement (appropriating a competitor's descriptive terms or names), and trade dress infringement (appropriating the design elements of a competitor's packaging or product). Restatement (Third) of Unfair Competition § 9 cmt f, at 82, & § 16, at 156 (1995). In *Vermont Motor Co. v. Monk*, 116 Vt. 309, 313, 75 A.2d 671, 673 (1950), we recognized a common law unfair competition claim for trade-name infringement, but affirmed the trial court's denial of injunctive relief. Much of the common law in this area has since been "federalized" — although not preempted — by the Lanham Trademark Act of 1946, 15 U.S.C.A. § 1125(a), which generally proscribes false designations and representations, as well as codified through state trademark registration acts, trade secret acts, and unfair or deceptive practices

Defendants also devote considerable attention to the requisite elements of such claims, citing federal precedents under the Lanham Act, 15 U.S.C.A. § 1125(a), and other authorities to demonstrate that "shopper" is a generic term that is not protectable as a trade name, and to further demonstrate that plaintiffs were required — and failed — to establish the "secondary meaning" essential to their infringement claims.[2] We find, however, that a resolution of these questions is not essential to a disposition of the appeal.

We recognize, to be sure, that plaintiffs adduced several witnesses to substantiate their contention that defendants' use of a similar name and format to the The Rutland Shopper caused some initial confusion among some advertisers. We note, as well, that the trial court was sufficiently persuaded of the potential for confusion to issue a preliminary injunction prohibiting defendants from using the name "Shopper" or from employing a format similar to the The Rutland Shopper. Nevertheless, we need not determine whether this evidence was sufficient to support an unfair competition claim based on trade name or trade dress infringement because we conclude that the record evidence was more than adequate to support plaintiffs' alternative unfair competition claim premised upon defendants' misappropriation of their business assets. See *Brueckner v. Norwich Univ.*, 169 Vt. 118, 126 n.1, 730 A.2d 1086, 1093 n.1 (1999) (absent

---

acts. See generally Restatement (Third) of Unfair Competition § 9 cmt. e, at 81-82; Prosser & Keeton § 130, at 1018-19.

[2] The general rule is that one cannot acquire trade name rights in a "generic" designation, i.e., a term that denominates a general type or class of goods, services, or business. Restatement (Third) of Unfair Competition § 15 cmt. a, at 142. "Secondary meaning" refers to the concept that a particular trade name or design has become "associated in the public mind primarily with the plaintiff's product or business." Prosser & Keeton § 130, at 1017; see also Restatement (Third) of Unfair Competition § 13 cmt. e, at 108 ("A designation that is not inherently distinctive, such as a word that describes the nature of the product on which it appears, nevertheless may become, as a result of its use by a specific person, uniquely associated with that person's goods, services, or business. Such acquired distinctiveness is called 'secondary meaning.' "). A lively doctrinal debate has developed over whether, and under what circumstances, a trade name or trade dress may be inherently distinctive, or whether proof of secondary meaning is required. Compare *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000) (product design trade dress cannot be inherently distinctive), with *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) (product packaging trade dress may be inherently distinctive); see generally R. Harris & S. Winkelman, *Why Product Configurations Cannot be Inherently Distinctive*, 91 The Trademark Rep. 988, 989-1001 (2001) (reviewing and discussing doctrinal developments surrounding elements of infringement claims).

request for special verdict or interrogatories, appellants must " 'establish error that undermines all theories of liability submitted to the fact-finder. If any single theory of recovery is untainted by error, we will affirm the lower court's judgment.' ") (quoting *Contractor's Crane Serv., Inc. v. Vt. Whey Abatement Auth.*, 147 Vt. 441, 446, 519 A.2d 1166, 1171 (1986)).

As noted, plaintiffs advanced two theories of unfair competition, one based on infringement, the other on misappropriation.[3] Although defendants here focus on issues related to the infringement claim, the record reveals that plaintiffs' principal theory, and the bulk of their evidence at trial, related to their assertion that defendants had engaged in unfair competition through the misappropriation and exploitation of their principal business assets. See, e.g., *United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App. 1993) (elements of misappropriation include defendant's unfair use of plaintiff's product in competition, thereby gaining unfair advantage); *Mercury Record Prods., Inc. v. Econ. Consultants, Inc.*, 218 N.W.2d 705, 710 (Wis. 1974) ("essence" of unfair competition-misappropriation claim is "defendant's use of the plaintiff's product or a copy of it in competition with the plaintiff and gaining an advantage in that competition").

Plaintiffs here adduced substantial, albeit circumstantial, evidence that upon vacating the premises of the The Rutland Shopper, defendants took a variety of business assets, including — as noted — customer lists, bookkeeping records, photographic equipment, and computer software. In this regard, plaintiffs' expert witness testified that he had appraised plaintiffs' paper as worth approximately $630,000 to $660,000 in mid-winter 1999, shortly before defendants left, and that by August or September, the paper's value had plummeted to near zero. The dramatic decline was directly attributable, in the expert's view, to plaintiffs' loss of these assets.

The bookkeeping records, for example, contained not only the identity of plaintiffs' advertisers — information otherwise easily retrievable — but records relating to accounts receivable, cashflow, and other financial data, the loss of which would require a laborious and debilitating exercise in reconstruction. The loss of plaintiffs' customer list — which the expert described as the "lifeblood" of the

---

[3] "Within the broad scope of unfair competition are the independent causes of action such as trade-secret law, 'palming off,' or passing off, and misappropriation, to name only a few." *United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App. 1993); see generally Prosser & Keeton § 130, at 1013-20.

paper — again entailed more than simply the names of advertisers; it showed each customer's individual advertising rate, which vary depending upon discounts and other incentives, and therefore contained "extremely valuable information" which — if appropriated by a competitor — would result in substantial billing confusion for plaintiffs and a decided competitive advantage for defendants. The loss of distribution resources — including distribution racks and the names of distributors and their territories — was also devastating to plaintiffs, according to the expert, because advertisers demand timely advertisements and strategic distribution points. The expert also testified that the loss of computer software and graphics affected the quality and appearance of plaintiffs' paper, to their competitive disadvantage. These cumulative losses, in conjunction with a new competitor, Gorruso, armed with the information and equipment appropriated from plaintiffs, were sufficient — in the expert's opinion — to dramatically reduce the competitiveness and ultimately the value of plaintiffs' paper.

In closing argument, plaintiffs' counsel focused on the misappropriation theory, arguing that defendant Gorruso had "gutted the business, kept what he wanted and threw away the rest so that [Maguire] had to start essentially from scratch, the business worth zero according to [plaintiffs' expert] Mr. Grimes." Consistent with this approach, the trial court instructed the jury on plaintiffs' misappropriation theory — without objection — as follows:

> Now, the Plaintiffs have claimed that the Defendants engaged in common law unfair competition. Unfair competition encompasses a broad range of unfair practices which may generally be described as misappropriation of the skill, expenditures and labor of another. Common law unfair competition must be grounded in either deception or misappropriation of the exclusive property of the Plaintiffs. The Plaintiffs assert that the Defendants engaged in unfair competition in two ways, principally. First, they argue that the Defendants misappropriated various items of property belonging to the Rutland Shopper and used that property in establishing Sam's Good News Shopper. Second the Plaintiffs argue that Defendants engaged in unfair competition by use of a trade name and dress so similar to their own that it resulted in the infringement of their trade name and dress.

Despite the evidence, argument and instruction on plaintiffs' misappropriation claim — summarized above — defendants assert that it was unavailing as a matter of law for essentially two reasons. First, in their opening brief, defendants argue that the misappropriation of a *trade dress* or *trade name* is not a legitimate means of circumventing the other essential elements of an infringement claim. See 1 J. McCarthy, McCarthy on Trademarks & Unfair Competition § 10.34[2], at 10-142 (3d ed. 1996) ("one cannot dispense with the carefully constructed requirements for trademark protection by blithely claiming that defendant 'misappropriated' some symbol of plaintiff which may or may not be capable of trademark protection"). Defendants rely, in this regard, on a statement in the trial court's order denying their motion to amend the judgment, to the effect that plaintiffs have produced enlarged copies of both papers "suggesting misappropriation of trade dress and graphics." While defendants may be correct that the trial court's statement inartfully confused the two unfair competition theories, they overlook the more essential point that the evidence, argument, and instructions focused extensively — if not exclusively — on the alleged misappropriation of certain proprietary information and tangible business assets, not simply plaintiffs' trade name or trade dress.

In their reply brief, defendants also argue that misappropriation claims are confined to intangible property, such as trade secrets; that nothing in this case "looks remotely like a trade secret"; and that at most plaintiffs stated a claim for conversion. The argument is unpersuasive. Although, as defendants note, the Restatement (Third) of Unfair Competition refers to the "misappropriation of intangible trade values," *id.* § 38 cmt. b, at 409, nothing in the Restatement limits misappropriation claims to any particular category of property. Indeed, the Restatement specifically cautions that the "specific forms of unfair competition [described therein] do not fully exhaust the scope of statutory or common law liability for unfair methods of competition." *Id.* § 1 cmt. g. Courts have long noted that common law unfair competition is a flexible and evolving concept, not confined to any particular form of unethical behavior. See *Ojala v. Bohlin*, 2 Cal. Rptr. 919, 924 (Ct. App. 1960) ("The legal concept of unfair competition has evolved as a broad and flexible doctrine with a capacity for further growth to meet changing conditions, and there is no complete list of activities which constitute unfair competition."); *Ryan v. Carmona Bolen Home For Funerals*, 775 A.2d 92, 95 (N.J. Super. Ct. App. Div. 2001) (concept of unfair

competition is "as flexible and elastic as the evolving standards of commercial morality demand" to discourage "deceptive practices which renders competition unfair") (internal citations omitted). We are not persuaded, therefore, that the unfair competition claim was limited to the misappropriation of trade secrets or other intangible trade values. See *United States Sporting Prods.*, 865 S.W.2d at 218 (rejecting contention that misappropriation must be of a trade secret or confidential information).[4]

█Nor does the mere availability of a conversion claim preclude assertion of a claim for unfair competition/misappropriation. The essence of conversion is the exercise of dominion and control over property to the exclusion of the owner's rights, or the withholding of *possession* from the owner under claim of title. See *Williams v. Chittenden Trust Co.*, 145 Vt. 76, 83-84, 484 A.2d 911, 915 (1984). The measure of damages for conversion is generally the value of the thing converted, measured by its cost to produce or fair market value, at the time and place of the conversion. See *id.* (measure of damages for conversion of architectural plans is cost to architect to produce plans); *Zachair, Ltd. v. Driggs*, 762 A.2d 991, 1003 (Md. Ct. Spec. App. 2000) (in action for conversion, "plaintiff is entitled to the fair market value of the property at the time of conversion") (internal citations omitted). The gravamen of unfair competition through misappropriation — in contrast — is the *unfair competitive use* to which defendants put the property, and the measure of damages is generally the resulting loss to the plaintiff or gain to the defendant. See Restatement (Third) of Unfair Competition § 45(1), at 512 (defendant is "liable for the pecuniary loss to the other caused by the appropriation or for the [defendant's] own pecuniary gain resulting from the appropriation"). Thus, plaintiffs could properly allege, and the jury could reasonably conclude, that defendants engaged in unfair competition through the misappropriation and exploitation of plaintiffs' business assets. Accordingly, we discern no basis to disturb this portion of the judgment.

_____

[4] We note that defendants have not argued that plaintiffs' unfair competition claim is preempted by the Vermont Trade Secrets Act, 9 V.S.A. §§ 4601-4609. The Act specifically "displaces conflicting tort, restitutionary, and any other law of this state providing civil remedies for misappropriation of a trade secret." *Id.* § 4607(a); see *Dicks v. Jensen*, 172 Vt. 43, 51, 768 A.2d 1279, 1285 (2001) (holding that Trade Secrets Act bars common law remedies for use of competitor's customer list to solicit customers). Here, however, defendants assert that plaintiffs' assets — presumably including plaintiffs' customer lists — are not "remotely like a trade secret."

■Defendants also contend the trial court erred in denying their post-judgment motion to reduce the conversion award from $143,000 to $1000. Defendants assert that the evidence did not support a finding that the converted assets were worth more than $1000, and that the jury's award represented a duplication of the unfair competition award. We agree with defendants in this regard. Although plaintiffs defend the award by noting that a list of assets attached to the original purchase and sale agreement valued the customer list at $150,000, the record demonstrates that the list's only real value was based on its use in facilitating the sale of advertisements, and that this loss to plaintiffs was subsumed in the unfair competition award. Thus, as plaintiffs do not otherwise dispute defendants' claim that the value of converted property did not exceed $1000, we will order that the conversion award be remitted to $1000.

Finally, defendants contend the evidence failed to support a finding that defendant Gorruso was personally liable for conversion. The basis of the claim is somewhat unclear. To the extent that it is premised upon the sufficiency of the evidence to "pierce the corporate veil," the claim was not raised below, and therefore was not preserved for review on appeal. *In re Miller*, 170 Vt. 64, 69, 742 A.2d 1219, 1223 (1999). To the extent that the argument is that the evidence was insufficient to establish that Gorruso converted plaintiffs' business property, the record evidence amply supported a reasonable inference that Gorruso took the property in question when he vacated The Rutland Shopper premises. See *Lockwood v. Lord*, 163 Vt. 210, 213, 657 A.2d 555, 557 (1994) (jury may draw reasonable inferences from evidence). Lastly, defendants contend that the special verdict form was misleading because it failed to distinguish between the corporate and individual defendants. The claim was not raised below, and therefore was waived on appeal. *Ulm v. Ford Motor Co.*, 170 Vt. 281, 294, 750 A.2d 981, 991 (2000).

*The amended judgment is modified by striking the damage award of $415,535.18 and substituting in its place an award of $273,535.18. In all other respects, the judgment is affirmed.*