### Birchwood Land Company, Inc. v. Ormond Bushey & Sons, Inc.

[82 A.3d 539]

No. 12-083

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 2, 2013

Motion for Reargument Denied September 10, 2013

*William Alexander Fead* of *Fead Construction Law, PLC,* South Burlington, for Plaintiff-Appellee/Cross-Appellant.

*David D. Aman* of *Heilmann, Ekman & Associates, Inc.,* Burlington, for Defendant-Appellant/Cross-Appellee.

¶ 1. **Dooley, J.** This appeal involves a dispute between developer, Birchwood Land Company, Inc., and contractor, Ormond Bushey & Sons, Inc., arising out of a construction contract. Developer sued for breach of contract, claiming mainly that contractor had removed excavated sand from the construction site without permission. Contractor counterclaimed for amounts due under the contract. The court found that contractor breached the contract and granted developer damages for the lost sand. The damages were offset by the unpaid balance owed to contractor. The court concluded that neither party was entitled to penalties or attorney's fees as the substantially prevailing party under the Prompt Pay Act and granted contractor prejudgment interest on its net award. On appeal, contractor argues that the court erred in denying its request for interest, penalties and attorney's fees as the substantially prevailing party. Developer argues that the court erred in limiting damages for the sand removal, denying its request for punitive damages, granting prejudgment interest on contractor's net recovery, and denying its claim for slander of title. We affirm.

¶ 2. The parties' relationship began in 2006 when they entered into three written contracts — the Rosewood Contract, the Tanglewood Contract, and the Sewer Contract. The projects were designed to create roadways and building lots on a wild and overgrown parcel of land. Under the agreements, contractor was obligated to clear the area and install sewers, utilities and roads, among other items. Disagreements arose after developer discovered that contractor had removed sand from the project site. Because of the sand dispute, developer withheld payment of $29,202 to contractor for work completed under one of the

contracts. Contractor filed a contractor's lien for the unpaid balance on all of developer's property involved in the development project in February 2008. The lien hampered developer's ability to sell two building lots, and developer asked contractor to release some of the land. Contractor refused, and eventually the parties negotiated a mutual resolution whereby contractor discharged the lien and developer deposited the unpaid sum in an escrow account maintained by contractor's counsel.

¶ 3. Contractor was obligated to complete road paving under one of the contracts. Because of the ongoing dispute over the sand, contractor was concerned developer would withhold payment for the paving, and did not do the work. Instead, developer hired a third party to complete the paving project, and was forced to pay more than what had been agreed to in the contract.

¶ 4. Developer filed suit for breach of contract, and contractor counterclaimed. Developer alleged breach of contract, slander of title and fraud and requested compensatory and punitive damages and attorney's fees under the Prompt Pay Act (PPA), 9 V.S.A. §§ 4001-4009. Contractor counterclaimed for breach of contract, and violation of the PPA, requesting damages, penalties, and attorney's fees. Some claims were dismissed or settled prior to trial.

¶ 5. After a four-day trial and a site visit, the court issued an initial decision, eventually supplemented by a lengthy decision on contractor's motion for reconsideration and a similarly lengthy decision in support of the final judgment. In summary, the court made the following findings. The main dispute between the parties concerned the disposal and removal of excess sand from the construction site. The question of how to dispose of or store excess sand from the project site arose early on. In June 2006, the parties met with the town zoning administrator who explained that without a special permit no excess materials, including sand, could be removed from the site. Soon thereafter, developer's representative walked the site with contractor and they identified locations where extra fill could be deposited. In conversations thereafter, developer communicated that sand was to be placed in the designated places. Difficulties arose in storing excess sand. For a time, there was a solution when the town approved the removal of sand for developer's personal use, which allowed sand to be taken to developer's personal property.

¶ 6. In July 2007, developer visited the construction site and observed a truck leaving with a load of sand. He followed it and watched the truck deposit the load at a different construction site where contractor was working. Developer contacted contractor and directed that no more sand should be removed. Despite this direction, the court found that contractor continued to remove sand from the project site. At trial, the parties disputed whether there was sufficient space for the excess sand at the project site. The court found that contractor was not authorized to dispose of developer's property however it desired, and found that developer had not consented to contractor removing the sand from the site. The court construed the contract as contemplating that the sand would remain on site. As a result, the court found that contractor breached its contract with developer. The court also ordered contractor to pay for the extra cost of paving performed by the third party.

¶ 7. As to damages, the court granted developer the replacement cost of the lost sand — $11,144. Developer also sought the cost of transporting the sand back to the construction site from the closest source and for spreading it on site. The court denied this request concluding that the transport and spreading costs were too speculative and otherwise unavailable. The court also denied developer's request for punitive damages, concluding that contractor did not engage in sufficiently egregious conduct to warrant imposition of exemplary damages.

¶ 8. Turning to developer's remaining claims, the court concluded developer failed to meet all the elements of a slander-of-title claim. The court found that contractor had a credible basis for its lien, that the lien properly extended to the entirety of developer's property, and therefore that the lien did not amount to a false statement about developer's interest in land. Further, the court concluded that contractor did not file the lien with malicious intent — a requirement for slander of title.

¶ 9. As to the parties' claims under the PPA, the court found that neither party substantially prevailed, and denied both parties' requests for attorney's fees. See 9 V.S.A. § 4007(c). The court also concluded that contractor was not entitled to payment of penalties under the PPA for developer's failure to pay amounts due under the contract because developer had withheld payment based on a good-faith dispute and that the amount withheld bore a reasonable relation to the disputed sum. *Id.* § 4007(b).

¶ 10. Based on the parties' stipulation, the court ordered judgment for contractor on the unpaid sum due under the contract of $23,511.28. This award was diminished by developer's recovery on its sand claim. The court increased the award to provide prejudgment interest to contractor. After subtracting amounts due to developer for recovery on its claims, contractor received a net damage award of $9980.28. Contractor appealed, and developer cross-appealed.

¶ 11. We begin with developer's claim regarding the amount of damages. Developer argues that the court erred in calculating the damages solely for the removed sand, claiming that the court should also have awarded sums for transporting the sand back to the site and spreading it.[1] Before we look at this claim, we summarize the basis for liability and the evidence on the use of the sand.

¶ 12. The court found a breach of contract based on three theories — breach of the implied covenant of good faith and fair dealing, breach of an oral agreement that the sand removed during contractor's work should remain on site, and breach of a written condition that contractor comply with "regulations and lawful orders of public authorities bearing on performance of the work." The court found that contractor viewed the sand "as excess materials that needed to be disposed of in order for construction to continue" and did not remove it for profit. Because contractor did not charge developer for removing the sand, contractor attempted to reduce its losses by selling it. The court agreed with contractor "that sand could not have been lawfully placed at some of the points" developer designated. Storing all the sand "likely would have required a permit change and would have required removing certain trees and undertaking a significant spreading and grading operation." The court noted that developer's owner testified that "if he were awarded monetary relief in this case he probably would use it to obtain sand fill and would store it on site for possible use in developing a building lot."

¶ 13. ▇ In a breach-of-contract case, the court will normally award expectation damages in an amount equal to the lost benefit

---

[1] According to developer, the demand for the cost of spreading the sand is supported by the statement in the court's findings that storing further excess sand on site would have required "a significant spreading and grading operation." Developer infers from this finding that contractor was obligated under the contract to shoulder this cost without receiving compensation for the extra storing costs.

of the parties' bargain. See *Tour Costa Rica v. Country Walkers, Inc.*, 171 Vt. 116, 124, 758 A.2d 795, 802 (2000). The court may also award damages for incidental or consequential loss. See *Murphy v. Stowe Club Highlands*, 171 Vt. 144, 158, 761 A.2d 688, 698 (2000) (quoting Restatement (Second) of Contracts § 347 (1981)). Here, developer argues that the benefit is the increased value of the property with the sand, so that the loss is the reduction in the value of the property when the sand is removed. Because this is hard to measure, an alternative is authorized — the cost of remedying the damage to the property. See Restatement (Second) of Contracts § 348(2). Developer argues that the cost of remedying the damage to the property includes the value of the sand plus the cost of getting sand to the site and the cost of spreading it, as contractor would have had to do if it honored the contract.

¶ 14. ■ There is a significant flaw in developer's argument. Contractor was authorized, indeed required, to remove the sand from the ground to perform its work. Thus, no breach resulted from extracting sand from the ground. The breach occurred when the sand was removed from the worksite. While the sand was once part of developer's real property, after it was separated from the land, it became personal property. See *Stone v. Proctor*, 2 D. Chip. 108, 115 (Vt. 1824) ("A load of clay, sand or stone, when in the market, or detached, collected and secured, with a view to some particular use, is, till again attached to the earth by the use intended, personal estate, and, as such, may be the subject of theft or trover."); see also *Galanes v. Haynes Bros., Inc.*, 113 Vt. 406, 408, 35 A.2d 19, 20 (1944) (timber that has been cut is personal property); *French v. Freeman*, 43 Vt. 93, 95-96 (1870) ("Manure is not necessarily real estate; it may be real or personal according to the circumstances under which it is placed. When lying upon the soil where it was first dropped, without severance, it is a part of the soil, like a clod of earth, loose stones, or falling and decaying vegetation, and is real estate. When severed from the soil, gathered up, and secured for use elsewhere, it is merely a personal chattel."). This is the general law around the country. See, e.g., *Hamlet at Willow Creek Dev. Co. v. Ne. Land Dev. Corp.*, 878 N.Y.S.2d 97, 117-18 (App. Div. 2009) (where parties had contract allowing defendant to haul away excess material, but prohibiting overexcavation, defendant subject to conversion claim for unauthorized assumption of ownership over excess material

because "soil or sand which has been severed from realty becomes personal property and may be subject to an action for conversion"); see generally R. Gascoyne, *Earth, Sand, or Gravel as Subject of Conversion*, 84 A.L.R.2d 790, § 1 (1962). Because there is no damage to real property in this case, we do not adopt a measure of damage on this theory.

¶ 15. ■ Nor can we find another theory to support developer's theory of expectation damages. Developer does not claim that the development project was impaired by the loss of the sand such that it lost profits. Although developer expressed possible uses of the sand, all were speculative. Further, the court's bases for finding contractor in breach do not support developer's requested expectation damages. The court found contractor breached the contract by violating a specific directive of the town, but there was no consequent monetary loss to developer because town took no action in response to that violation. The court also found that the parties had an oral agreement that contractor would not remove sand from the site, but the agreement did not specify an alternate use of the sand by developer. As to the court's finding that contractor breached the implied covenant of good faith and fair dealing, we note that this is often described as a species of tort, despite its basis in contract. See *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993) ("Although we have stated that a covenant of good faith is implied in every contract, an action for its breach is really no different from a tort action, because the duty of good faith is imposed by law and is not a contractual term that the parties are free to bargain in or out as they see fit.").

¶ 16. ■ The measure of developer's damages is not for any damage to its real property, but for the unlawful taking of its personal property. Although styled as a breach-of-contract claim, developer's claim for the removed sand is more properly viewed as one for conversion of personal property because contractor exercised dominion over the sand without authorization by developer.[2] See *Montgomery v. Devoid*, 2006 VT 127, ¶ 12, 181 Vt. 154, 915 A.2d 270 (explaining that conversion is established by showing that another has appropriated the owner's property or exercised

---

[2] The contract is relevant because it establishes the scope of contractor's authorization. Contractor had permission to extract the sand from the ground, but did not have permission to take the sand off-site and sell it.

dominion over it and citing Restatement (Second) of Torts § 222A). Therefore, in determining damages, we refer to law on damages for conversion.[3] See *Laurin v. DeCarolis Constr. Co.*, 363 N.E.2d 675, 678-79 (Mass. 1977) (recognizing that purchaser's claim against vendor for tree and gravel removal was one for breach of contract, but using conversion principles to determine damages). "The measure of damages for conversion is generally the value of the thing converted, measured by its cost to produce or fair market value, at the time and place of the conversion." *Maguire v. Gorruso*, 174 Vt. 1, 8, 800 A.2d 1085, 1091 (2002); see 1 D. Dobbs, Dobbs Law of Remedies § 5.13(1), at 835 (2d ed. 1983) (explaining that damages for the permanent deprivation of property is usually the market value of the item taken).[4]

¶ 17. ■ Therefore, the proper measure of damages in this case was the fair market value of the sand at the time it was improperly converted by contractor. Although the trial court set fair market value as the measure of damages for different reasons, we may affirm a judgment on different grounds than those relied on by the trial court.[5] See *Caledonian-Record Publ'g Co. v. Vt. State Coll.*, 2003 VT 78, ¶ 7, 175 Vt. 438, 833 A.2d 1273 (affirming judgment where "[w]e reach the same result as the trial court but based on different reasoning"). Because the damage award was correctly calculated, there was no abuse of discretion.

---

[3] We recognize that developer attempted to amend its complaint to add a claim of conversion and that request was denied. In using the law of conversion as a guide for measuring damages, we are not revisiting that decision or adding a new claim to developer's complaint.

[4] Other measures of damages may be appropriate when an item is damaged but not permanently taken. When an item is harmed but not taken or destroyed, the measure of damages is usually "the sum by which its market value has been diminished," but may alternatively be the cost of repair. Dobbs, *supra*, § 5.13(1), at 836-38. Special or consequential damages, such as for loss of use or emotional harm, are available only when there is proximate cause and the damages are not duplicative of general damages. *Id.* § 5.15(1), at 874. Here, contractor permanently deprived developer of the sand; therefore, there can be no damages for "repair." In addition, developer did not allege any special damages resulting from the loss of the sand.

[5] The trial court analogized developer's remedy to that available under the Uniform Commercial Code (UCC) to a buyer of goods after nondelivery by a seller, citing 9A V.S.A. § 2-711 to § 2-712. Developer argues that this comparison was an error of law and logic. We do not reach this question because we conclude that the court's award of the sand's fair market value was supported by a different theory.

¶ 18. Developer's second damages argument is that the trial court erred in ruling that contractor's taking of sand was wrongful, "but it does not rise to the level that would permit imposition of damages meant to punish [contractor]." The court found that contractor's conduct was not done "with any ill will toward [developer] or for any malevolent purposes." Developer argues that these findings lack evidentiary support.

¶ 19. ■ Punitive damages are generally not awarded for breach of contract, except when "the breach has the character of a willful and wanton or fraudulent tort, and when the evidence indicates that the breaching party acted with actual malice." *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 53, 179 Vt. 167, 893 A.2d 298. "Actual malice may be shown by conduct manifesting personal ill will or carried out under circumstances evincing insult or oppression, or conduct showing a reckless disregard to the rights of others." *Bolsta v. Johnson*, 2004 VT 19, ¶ 5, 176 Vt. 602, 848 A.2d 306 (mem.). A trial court's findings on punitive damages will not be overturned unless the court abused its discretion. *Id.* ¶ 9.

¶ 20. ■ ■ The trial court found that contractor did not act with malice in removing the sand from the construction site, and this finding is supported and not erroneous. Certainly, the evidence demonstrated, and the court found, that contractor removed the sand from the construction site without developer's permission. This breach alone, however, does not suggest the type of bad motive necessary to award punitive damages. See *Stowe Club Highlands*, 171 Vt. at 155, 761 A.2d at 696 (explaining that to support punitive damages defendant's actions must "be akin to a willful and wanton, or fraudulent, tort"). The court also found that contractor viewed the sand as excess materials that had to be moved for construction to continue. The court found that contractor did not move the sand to profit from its sale and mostly lost money on it. We conclude that the evidence fully supports the trial court's conclusion that the contractor did not remove the sand based on malevolent reasons or personal ill will against developer. Therefore, we conclude that the court did not abuse its discretion in denying developer's request for punitive damages.

¶ 21. ■ Next, we address the parties' claims for interest, penalties, and attorney's fees under the PPA. "The purpose of the prompt payment act is to provide protection against nonpayment to contractors and subcontractors." *Elec. Man, Inc. v. Charos*,

2006 VT 16, ¶ 12, 179 Vt. 351, 895 A.2d 193. Thus, the statute obligates owners to pay contractors "in accordance with the terms of the construction contract." 9 V.S.A. § 4002(a). If payment is delayed, the owner is required to pay interest at the statutory rate. *Id.* § 4002(d). Further, if the owner unreasonably withholds acceptance of work and fails to pay, the owner is subject to payment of interest, a penalty, and attorney's fees. *Id.* § 4005(d). The amount of the penalty equals "one percent per month of all sums as to which payment has wrongfully been withheld." *Id.* § 4007(b). An owner may withhold payment of "an amount equaling the value of any good faith claims against an invoicing contractor" and is not penalized for withholding payment when the amount withheld "bears a reasonable relation to the value of any claim held in good faith by the owner." *Id.* § 4007(a), (b). In a proceeding to recover payment under the statute, attorney's fees are awarded to "the substantially prevailing party." *Id.* § 4007(c).

¶ 22. We start with the interest award on contractor's judgment. The court awarded contractor prejudgment interest on its net judgment, subtracting the amount awarded developer for the sand. Because the amounts due to contractor represented three unpaid invoices, the court divided the net sum proportionally between the three invoices and began the interest thirty days from those dates. On appeal, developer argues that no prejudgment interest should have been awarded because it was entitled to withhold payment under the PPA based on its good-faith counterclaim.

¶ 23. ▆▆ ▆▆ In making this argument, developer conflates penalties under § 4007 of PPA and prejudgment interest. Although both accrue at the rate of 1%, they are distinct legal remedies. Our general rule is that "[p]rejudgment interest is awarded as of right when damages are liquidated or reasonably certain." *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 36, 181 Vt. 513, 928 A.2d 497. Even when the amount of damages is uncertain, a court may award prejudgment interest in its discretion. *Id.* Although the court discussed the PPA interest provision in 9 V.S.A. § 4002(d), the court relied on our general prejudgment interest law, as augmented by decisions from other jurisdictions. See generally J. Kemper, *Allowance of Prejudgment Interest on Builder's Recovery in Action for Breach of Construction Contract*, 60 A.L.R.3d 487, § 5(d) (1974) ("In virtually all jurisdictions adhering to the view that prejudgment interest may be allowed where a builder's claim under a construction contract is liquidated, or where the

amount thereof, although unliquidated, is capable of ascertainment by calculation or computation, or by reference to established market values, it has also been held or recognized that the builder's right to recover such interest on his claim is not barred or precluded by the fact that the party against whom it is asserted may have or put forward an unliquidated setoff or counterclaim."). In *B & F Land Development, LLC v. Steinfeld*, 2008 VT 109, ¶¶ 17-19, 184 Vt. 624, 966 A.2d 127 (mem.), based on similar facts to this case, we rejected essentially the same arguments made here and affirmed an award of prejudgment interest.

¶ 24. ▮▮ ▮▮ We agree with the trial court's analysis under the general prejudgment interest law. Here, damages were reasonably certain and therefore prejudgment interest was properly awarded as a matter of right. Damages need not be "precisely or infallibly ascertainable, only . . . reasonably so." *Smedberg v. Detlef's Custodial Serv., Inc.*, 2007 VT 99, ¶ 38, 182 Vt. 349, 940 A.2d 674. The amount due under the contract was certain. At no time did developer allege that the amount billed to it by contractor was incorrect. Developer acknowledged that contractor had completed the work, but alleged that the cost of the removed sand offset this payment. Simply because developer claimed an offset against the sums due did not diminish the certain nature of the balance owed. Developer made a choice to withhold payment and risked that it would not be successful in claiming an offset. Developer now must bear the burden of that risk. To avoid the payment of prejudgment interest, developer could have simply tendered the amount due. See *EBWS*, 2007 VT 37, ¶ 36; *Agency of Natural Res. v. Glens Falls Ins. Co.*, 169 Vt. 426, 435, 736 A.2d 768, 774 (1999).

¶ 25. ▮▮ Developer counters that under the PPA interest provision no interest is available because he had a good-faith counterclaim for the loss of the sand. The PPA provision, 9 V.S.A. § 4002(d), provides:

> Except as otherwise agreed, if any progress or final payment to a contractor is delayed beyond the due date established in subsection (c) of this section, the owner shall pay the contractor interest, beginning on the 21st day, at an interest rate equal to that established by 12 V.S.A. § 2903(b), on such unpaid balance as may be due.

Developer argues that the parties "otherwise agreed" because the contract between the parties allowed developer to withhold payment to contractor on account of "damage to the owner." It argues that payment of the installments was not due until the counterclaim was resolved. Developer further argues that under § 4007(a) the interest is not due as long as there was a good-faith dispute over whether developer owed anything to contractor.[6]

¶ 26. Developer's construction of § 4002(d) is not consistent with the statute's purpose. There is no indication that the words "otherwise agreed" means that developer is not obligated to pay prejudgment interest as part of damages simply because the parties' contract allowed withholding of payment under certain circumstances. Developer's defense against prejudgment interest is distinct from his defense to a penalty for wrongful withholding of payment. Developer's interpretation of § 4002(d) would essentially import the standard for payment of a penalty to the standard for payment of prejudgment interest. That means a contractor would be eligible to recover prejudgment interest only when it could also recover a penalty. Further, the law on prejudgment interest for contracts covered by the PPA would be more restrictive than the general law on the subject despite the fact that the purpose of the PPA is "to provide protection against nonpayment to contractors and subcontractors." *Elec. Man*, 2006 VT 16, ¶ 12. This second consequence that is contrary to the legislative intent is alone enough to make the interpretation of § 4002(d) sought by developer unlikely.

¶ 27. ■■■ We conclude that the "[e]xcept as otherwise agreed" language in § 4002(d) gives effect to an agreement by the parties about prejudgment interest rather than, as argued by developer, an agreement about the right of the developer to withhold payment of an invoice. Similarly, we view the due date language as referring to the times for payment set out in § 4002(c) and not

---

[6] We note that the last argument was accepted by the U.S. District Court for the District of Vermont in *Jim Billado Roofing, LLC v. Custom Copper & Slate, Ltd.*, No. 1:08-CV-97, 2010 WL 1881097, at *6 (D. Vt. May 10, 2010). The trial court acknowledged the federal court holding but refused to follow it because there was no reflection in that decision that prejudgment interest is controlled by § 4002(d) and not § 4007(b). We agree that the good-faith-claim defense applies to a penalty authorized by § 4007(b) and is nowhere reflected in § 4002(d). Thus, contrary to the U.S. District Court, we hold that prejudgment interest is available to contractor despite the presence of developer's unliquidated claim for the taking of the sand.

to the right of the developer to withhold a payment over a dispute with the contractor. In light of this construction, the trial court properly ruled that contractor was entitled to prejudgment interest on its net judgment.[7]

¶ 28. Next, contractor argues it is entitled to a penalty under the PPA, § 4007(b), based on its assertion that developer wrongfully withheld payment due under the contract. Developer withheld nearly $30,000 in payments based on its belief that this amount would be offset by its claim against contractor for the lost sand. In its complaint, developer claimed damages of $56,825 for replacing, trucking, and spreading the lost sand, plus punitive damages. Developer recovered $11,114 in damages for replacement sand, and contractor argues that because developer withheld far more than what it recovered the sum withheld was unreasonable.

¶ 29. ■ The question of whether penalties are due for withholding payment focuses on whether the amounts due bear a "reasonable relation" to the value of the claim and were thus withheld in good faith. *Id.* § 4007(b). Simply because an owner actually recovers less than what he alleged was due does not make the amount unreasonable or withheld in bad faith. See *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 8, 178 Vt. 77, 872 A.2d 292 (explaining that it is unfair to penalize homeowner for miscalculating amount entitled to withhold where there was a good-faith basis for withholding). The trial court has discretion in determining whether to invoke a late-fee penalty. *Id.* ¶ 7.

¶ 30. ■ Here, the court found that although developer did not recover the full amount it alleged was due for the removed sand, the amount it withheld was reasonably related to the damages it claimed for that loss. This finding is supported by the evidence and not erroneous. Under the circumstances, where developer had difficulty ascertaining exactly how much sand contractor had removed from the construction site and developer reasonably believed it was also entitled to trucking and spreading costs for the sand, the amount withheld by developer was reasonable. This evidence also supports the court's finding that developer withheld payment in good faith. Therefore, there are no grounds to disturb the court's denial of a penalty.

---

[7] Neither party has appealed the trial court's calculation of interest, and, therefore, we do not reach whether the amount was correctly calculated.

494

¶ 31. The third PPA claim relates to attorney's fees and is made by both sides. Each asserts a right to attorney's fees as the substantially prevailing party under § 4007(c). "[T]he question of whether any party to a lawsuit substantially prevailed is left to the trial court's discretion." *Fletcher Hill*, 2005 VT 1, ¶ 12. The determination of when to accord a party this status depends not simply on a mathematical comparison of the parties' respective recoveries. *Id.* ¶ 14. It "cannot be reduced to merely calculating the net verdict." *Id.* ¶ 15. The court may also in its discretion determine that neither party substantially prevailed. *Id.* ¶ 14. The trial court did not abuse its discretion in concluding that neither party substantially prevailed in this case.

¶ 32. Contractor argues that the court abused its discretion in concluding it did not substantially prevail because it achieved a comparative victory on the issues litigated and received a greater proportionate award. Contractor relies on *Burton v. Jeremiah Beach Parker Restoration & Construction Management Corp.*, 2010 VT 55, ¶ 8, 188 Vt. 583, 6 A.3d 38 (mem.), to support its claim that a contractor substantially prevails when it receives a comparative victory and is awarded a greater proportion of what it sought. In *Burton*, the homeowner sued for breach of contract, asserting several different claims related to the quality of the work, and the contractor counterclaimed for nonpayment. While the homeowner received an award of damages on one claim of faulty workmanship, the court found no evidence to support the homeowner's other damage claims, and awarded the contractor damages on its counterclaim. *Id.* ¶ 3. The homeowner received a small net judgment, but the court awarded contractor attorney's fees as the substantially prevailing party, concluding that while homeowner received some damages, he had recovered only a small portion of what he sought. *Id.* ¶ 9. This Court affirmed, concluding that the court was within its discretion to award the contractor attorney's fees as the substantially prevailing party where the contractor had prevailed on its own counterclaim for breach of contract and successfully defended against the majority of the homeowner's claims. *Id.* ¶ 10.

¶ 33. Contractor argues that because it similarly prevailed on the majority of claims[8] and also received the net monetary award,

---

[8] While the parties disagree on this point, even accepting that contractor indeed prevailed on the majority of the claims does not mandate reversal.

it should be deemed the substantially prevailing party. Contractor notes that two of the developer's claims were dismissed prior to trial, and that developer did not prevail on most of its claims, including the slander-of-title claim.[9] Finally, contractor points out that developer did not prevail on its punitive damages claim.

¶ 34. Developer also urges us to reverse the denial of attorney's fees to it, but this argument is supplemental to the arguments on the measure of damages for the sand and the availability of punitive damages. Since developer did not prevail on the main arguments, it has no claim to attorney's fees. We note, however, that by stipulation prior to trial, the parties agreed that contractor would credit developer approximately $7300 for three items. Also, the court found for developer on its claim that contractor owed for extra paving costs — $887 — developer incurred when contractor did not complete the paving under the Rosewood Contract. As part of the stipulation discussed above, developer withdrew claims for three items totaling around $5850.

¶ 35. In responding to contractor's argument that it had substantially prevailed, the trial court reasoned:

> Although [contractor] will receive more money than [developer] in the Judgment, [contractor] did not prevail on the merits of the sand issue. The Court is guided in this determination by the fact that nearly all of the evidence at trial concerned the sand issue, the legal memoranda focus on that issue, and there was no major dispute at trial as to the amount [contractor] was owed under the agreements. In other words, [contractor] lost the singular issue that was the focus of the trial in this action. Moreover, [developer] set out a good-faith defense to payment of the full amount owed to [contractor] based on the misappropriated sand.

In response to a motion to reconsider, the court reemphasized that the litigation was about sand, calling the other issues "minor,"

[9] The statute, § 4007(c), authorizes attorney's fees to the substantially prevailing party "in any proceeding to recover any payment within the scope of this chapter." The slander-of-title claim was included with the breach-of-contract claims in this case. While it is related to the rest of the case because it involves the method contractor chose to collect its bill, it is otherwise a separate dispute with facts and law substantially different from the other claims. There is no indication that the trial court gave any weight to contractor's victory on this claim. We affirm that approach.

and concluding that contractor's failure "to acknowledge its error in removing the sand and to account fully for the lost sand, was the major issue that separated the parties and that necessitated a four-day trial."

¶ 36. Contractor's argument understates the flexible nature of determining the substantially prevailing party. Our cases are uniform in stressing that whether a party substantially prevailed is not a mathematical calculation based on the number of claims won or the amount of money awarded. See *Fletcher Hill*, 2005 VT 1, ¶ 14. *Burton* stressed the fact-centered and flexible nature of the decision, stating that the determination rests on a "flexible and reasoned approach focused on determining which side achieved a comparative victory on the issues actually litigated or the greater award proportionally to what was actually sought." 2010 VT 55, ¶ 8 (quotations omitted). Further, the trial court may decide that neither party substantially prevailed. *Trombly Plumbing & Heating v. Quinn*, 2011 VT 70, ¶ 13, 190 Vt. 552, 25 A.3d 565 (mem.). Contractor's status as the net victor — both in terms of number of claims and monetary award — does not compel a conclusion that it substantially prevailed under the statute.

¶ 37. Further, the facts of *Burton* are distinguishable from this case. In *Burton*, there were multiple claims brought by the homeowner all of which were disputed at trial, and the contractor successfully defended against all but one of the homeowner's claims and also succeeded on its counterclaim. Here, contractor's right to payment was not really contested. Both parties agreed that contractor was due payment under the contract and, by stipulation, they agreed on the amount of that payment. The dominant question was the amount of any off-set due to developer. While developer brought other claims, the real issue "actually litigated," *Burton*, 2010 VT 55, ¶ 8, was whether contractor improperly removed sand from the construction site. Indeed, in the view of the trial judge, the failure of contractor to admit to the conversion of the sand, and to fully account for the sand converted, caused the trial to extend for four days. Contractor could take that position, but the trial court acted within its discretion to consider contractor's position in determining whether it substantially prevailed. We conclude that it was not an abuse of discretion for the court to conclude that although contractor received a net victory, it was not the substantially prevailing party.

¶ 38. Developer's final argument is that the court erred in dismissing its slander-of-title claim. The claim arises out of contractor's lien filed when developer withheld payments due under the contract. The contractor's lien covered sixty acres of the developer's land, including two building lots developer had scheduled for sale. Developer demanded that contractor release those lots, but contractor refused until the disputed payment amount was put in escrow. In the slander-of-title claim, developer asserted that the lien was overbroad and that contractor's lien was thus false.

¶ 39. To prove slander of title, developer was required to demonstrate that contractor published a false statement concerning its title to land, the statement caused special damages, and contractor acted with malice. *Sullivan v. Stear*, 2011 VT 37, ¶ 8, 189 Vt. 442, 23 A.3d 663. Filing a mechanic's lien can form the basis of a slander-of-title claim if the lien lacks a credible basis. See *Wharton v. Tri-State Drilling & Boring*, 2003 VT 19, ¶ 15, 175 Vt. 494, 824 A.2d 531 (mem.). The trial court concluded that developer failed to meet the first and third elements of a slander-of-title claim. The lien was not overbroad and therefore there was no false statement, and contractor did not act with malice.

¶ 40. In order to sustain the first element of the tort, developer had to prove that contractor published a false statement because the lien had no credible basis. A lien's proper scope is defined by statute. The relevant statute provides that a contractor who improves real property "shall have a lien upon such improvements and the lot of land on which the same stand." 9 V.S.A. § 1921(a). The statute defines the lot of land as "all of the land owned or held by the owner and used or designed for use in connection with such improvements, but such lien shall not extend to other adjacent lands used for purposes of profit." *Id.* § 1921(e). Although developer admitted that contractor was building roads and sewer and water lines for all parts of developer's project, developer argues the lien included "adjacent lands used for purposes of profit" and was, therefore, overbroad. Developer argues that the lien should have covered only "the five acres of constituting the subdivision lot encompassing Tanglewood Drive and Rosewood Trail."

¶ 41. We review issues of statutory construction de novo, striving to implement the Legislature's intent by applying the plain

language of the statute. *Vt. Human Rights Comm'n v. Agency of Transp.*, 2012 VT 45, ¶ 5, 191 Vt. 485, 49 A.3d 149. The trial court rejected developer's construction of the statute. The court construed the second phrase "but such lien shall not extend to other adjacent lands used for purposes of profit," 9 V.S.A. § 1921(e), as specifying that the lien could not extend to lands used for profit and *also* not connected with the improvements. Thus, under the trial court's interpretation if developer operated a preexisting motel on adjacent land, contractor's lien could not extend to the adjacent land and motel. But if the use on adjacent land was "in connection with [contractor's] improvements," *id.* § 1921(e), as it was here, the lien could cover such land. Developer argues that the trial court's construction is erroneous because it renders the second phrase defining lot of land surplusage and the statute should instead be construed to preclude attachment of any adjacent land being used for profit, even those lands connected to the improvements.

¶ 42. ▆▆ ▆▆ We agree with the trial court's construction of the statute. The statute states that the lien is imposed on "such improvements and the lot of land on which the same stand," but prevents a lien from extending to "other adjacent lands used for purposes of profit." *Id.* § 1921(a), (e). The use of the word "other" indicates that the Legislature intended to refer to different land than what was referred to at the beginning of the phrase. Applying the plain language, we conclude that the phrase simply emphasizes that adjacent land used for profit *and not connected to the improvements* is exempt from attachment. Contrary to developer's argument, this phrase is not surplusage, but a clarification to prevent land used for profit but not connected to the improvements from being attached, as in the motel example above. Because all of the real property covered by the lien was connected to the improvements, the lien was of proper scope, and there was no false statement.

¶ 43. ▆▆ We also affirm the trial court decision that developer has failed to demonstrate the third element of slander of title — that contractor acted with malice. The court found that contractor acted in good faith in filing the lien based on the honest belief that it was owed money from developer pursuant to the contract and had a defense to all of developer's contractual claims including the claim for the removal of the sand. This finding is amply

supported by the record. In fact, at no point did developer disagree that contractor had performed the work required by the contract and was entitled to payment for that work. The point of contention was whether that amount should be offset for contractor's removal of sand.

¶ 44. ▮ Further, we find no malice in contractor's refusal to release certain building lots from the lien so that developer could complete the sales for those lots, even assuming as developer alleges, that the remaining land was of sufficient value to cover contractor's claim. Nothing in the statute requires a contractor to reduce the amount of land validly covered by a lien on the theory that the lien can cover only such land as is equal in value to the outstanding claim. As explained above, contractor had a good-faith claim for the amount it was owed under the contract, and filed the lien to ensure payment of that debt. Contractor was not obligated to release the lien, or part of it, so that developer could complete the sale of several lots. Neither was contractor completely intransigent on the issue; it negotiated with developer and released the lien after developer deposited the amount due in an escrow account. Therefore, the evidence supports the court's finding that contractor acted to protect its interest in being paid and not out of malice or ill will.

*Affirmed.*